CHARLES GARDNER et al., Appellants, *v.* WILLIAM WATSON et al., Appellees.

#### APPEAL FROM SANGAMON.

Where a judgment creditor agreed with one of three defendants, who was the principal in the debt upon which the judgment was recovered, the others being sureties, that so long as the principal would pay the interest on the judgment, and if he would pay the costs, the matter might stand as though no judgment had been obtained, which agreement was for an indefinite length of time: —

*Held*, that such an agreement could not be enforced in a court of equity.

A promise to delay the collection of a debt for an uncertain period, will not discharge a surety. To discharge a surety by extension of time, there must be a sufficient consideration, and a time definitely fixed.

THE appellees filed their bill in chancery, setting out that they became the sureties of one John A. Corneau, in a promissory note, about the 13th day of March, 1840, payable to Charles Gardner, as follows:

*" Springfield, Ills., March* 30, 1840.

" On or before the first day of October next, we jointly and severally promise to pay Charles Gardner, or order, one hundred and six dollars, value received, and if not paid when due, to draw interest thereafter at the rate of 12 per cent. per annum, payable semi-annually till paid.　　J. A. CORNEAU,

$106.00.　　　　　　　　　　　　THOMAS MOFFETT,

H. WEBSTER. Security.

W. W. WATSON."

That judgment by confession was recovered on said note, at the July term of the Sangamon Circuit Court; that afterwards,

Gardner and Corneau agreed, that if Corneau would pay on said judgment interest at the rate of twelve per cent. per annum, payable semi-annually, and the costs of said suit, Gardner would issue no execution on said judgment, or would waive his right to issue execution. Said agreement was without the consent of the appellees. The appellees charge that Corneau complied with his agreement. They allege that said judgment has been assigned to D. and I. P. Spear, without recourse, and that they have issued execution. They pray for a perpetual injunction, which is decreed upon the hearing. Oath being waived, Gardner answers that, in 1840, he placed money in the hands of E. Wright, to loan, and that he knew nothing of the said note or judgment until 1842, when Wright turned all his business as agent to Gardner, his principal. Gardner denies the agreement stated in the bill, and also denies the receipt of any interest from Corneau in any way, except interest due to him by Corneau, on other notes than the one referred to.

The Spears answer, denying all knowledge of any transaction such as alluded to in the bill, and say they are *bonâ fide* assignees of the said judgment, and that they have caused execution to issue.

The appellees, to sustain their bill in the court below, offer the deposition of Corneau, to prove that he was principal in the said note, and that the appellees were mere sureties; also to prove the agreement as alleged in the bill of the appellees. The depositions are objected to, because Corneau is an interested witness, and party to the record. The objection is overruled by the court below. Corneau deposes that he is principal, and Watson and Moffett are sureties in said note, and that this was known to Gardner; that after the rendition of said judgment, he agreed with Gardner, that if he paid the interest on said note and judgment, at the rate of twelve per cent. per annum, Gardner would have no execution issued on said judgment, and if he would pay the costs which had then accrued the matter might be considered in the same light as though no judgment had been rendered, and this agreement or contract was for an indefinite length of time. Corneau further deposes that he paid the interest which had accrued, and the costs, according

to his contract, and about subsequent payments of interest he cannot distinctly state. Corneau further deposes that Watson and Moffett knew nothing of the contract.

The appellees further introduce, to sustain their bill, the said judgment and execution, returned by order of the plaintiff, and that no execution was issued until 1849. The proceedings show a judgment, under a power to confess, executed by J. A. Corneau, W. W. Watson, Thomas Moffett, and F. Webster, jr., under their hands and seals.

E. Wright, witness for defence, testifies that Gardner came to Springfield in the fall of 1842; before that time he loaned money; has no knowledge of making any arrangement with Corneau about return of execution; if any arrangement was ever made, it was with the consent of all parties interested; there were other notes taken from Corneau for loaned money; when money was loaned to Corneau security was required; doubtful of his responsibility; his impression money could have been made out of the securities after judgment; has exercised no authority over Gardner's business since August, 1842.

William Harvey, sheriff in 1844: had claims against Corneau; made none by force of levy and sale; Corneau reputed insolvent up to the time he left, in 1845 or 1846; never went to ascertain if Corneau had property subject to execution; Corneau had more property than the law allowed him; Corneau said there was a mortgage on his property.

Robinson, constable, 1846: Corneau turned out property on execution, but arranged the matter; Corneau had his house well furnished.

Charles Gardner released and sworn. Corneau gave other notes besides the one in judgment; denies making any contract such as Corneau speaks of; denies the receipt of interest on said judgment, but received interest on other debts due by Corneau; knew nothing of the relation of the parties to the note; does not say absolutely about the payment by Corneau of interest on the judgment; but his belief is that he did not; Corneau, he understood, was not good, and Moffett and Watson were both hard cases, and the reason he did not issue execution was that he did not wish to spend money unnecessarily. A man

might forget, but have no recollection of an agreement to wait on Corneau; generally knows what he is about; always applied to Corneau for payment.

The complainants then introduce William F. Elkin, sheriff, who returned the execution; his recollection very indistinct about it; but his impression is that he had authority from E. Wright to return execution; his impression Corneau had no property subject to execution; such impression was not from Corneau; Corneau arranged executions; never tested whether Corneau had property subject to execution; Corneau said his personal property was mortgaged to Clifton, and his understanding was that the title to his real estate was not in him.

Stephen A. Corneau, says his brother had plenty of property to satisfy execution of one or two hundred dollars before he left here in July, 1846.

B. A. Watson, says his father, W. W. Watson, was responsible since 1837, and execution for $200 could have been made out of him.

Fee-book introduced, showing payment of costs in the original suit of Gardner *v.* Watson, Moffett et al., July 28, 1844.

Unsatisfied judgments in the Sangamon Circuit Court against Corneau to a considerable amount are in evidence.

### *Errors Assigned.*

In admitting the deposition of Corneau; in decreeing a perpetual injunction to the collection of the judgment; and, a general assignment.

The decree in this case was ordered by DAVIS, Judge, at December term, 1851.

E. B. HERNDON, for appellants.

S. T. LOGAN and W. H. HERNDON, for appellees.

TRUMBULL, J. In the view we take of this case it is unnecessary to notice more than a single point. The only ground upon which the appellees seek relief is, that they were securities for Corneau on a note dated in 1840, upon which judgment had

been entered against both him and them in the Circuit Court of Sangamon county in 1842; that after the rendition of judgment Corneau without their knowledge or consent, made an arrangement with Gardner, the payee of the note and plaintiff in the judgment, whereby it was agreed, that if Corneau would pay the costs of said judgment and interest thereon at the rate of twelve per cent. per annum, as specified in the note, said plaintiff would issue no execution on said judgment, or would waive his right to issue such execution. The bill then alleges that Corneau did pay the costs, and the interest at twelve per cent. for some length of time, which agreement and suffering the judgment to remain dormant up to near the time of filing the bill in 1850, is alleged to be a fraud upon the securities of Corneau, whereby they are released from their responsibility as securities. The evidence in reference to this agreement is as indefinite as the bill. Corneau, the only witness upon the subject of the agreement, says : " There was an agreement or contract entered into between said Gardner and myself, that if I would continue to pay the interest on said note and judgment at the rate of twelve per cent. per annum, he would have no execution issued on said judgment, and if I would pay the costs which had then accrued, I might consider the matter in the same light as though no judgment had been obtained; and this contract or agreement was for an indefinite length of time." This witness further stated that the agreement was made shortly after the rendition of judgment, and that he paid the costs and interest which had accrued, but did not pretend that any subsequent payment of interest was made. The agreement as set forth in the bill and proved by Corneau is entirely too indefinite to be enforced in a court of equity. It does not appear that Gardner waived his right to issue execution for any definite period; so far from it, Corneau expressly states that the contract was for an indefinite length of time. There was nothing in the agreement to prevent Gardner from suing out execution the next moment after Corneau paid up the interest. Gardner did no act which could have prejudiced the rights of the securities, because he did not put it out of his power to issue execution at any moment when required. There was no obligation on Corneau to pay the twelve per cent. for

any particular length of time ; but he was at liberty to cease pay-ing it the moment after the agreement was made, as the record shows he actually did. An agreement to be binding must be mutual, and if Gardner could not compel Corneau to pay the twelve per cent. interest for any particular length of time, neither could Corneau compel Gardner to suspend execution for any definite period.

A promise to delay for an uncertain period will not dis-charge a surety, for the reason that the stay, being indefi-nite, can be arrested at any time the sureties request it to be done. The cases of Miller *v.* Stem, 2 Barr, 286, McGee *v.* Met-calf, 12 Smedes & Marshall, 535, and Alcock *v.* Hill, 4 Leigh, 622, are express to the point, that to discharge a surety by exten-sion of the time of payment there must be not only a sufficient consideration, but the time must be definitely fixed.

Gardner's promise to Corneau that the latter might consider the matter as if no judgment had ever been obtained, if he would pay the costs, was wholly without consideration, as Corneau was bound for the costs at all events. This part of the agreement amounted to nothing more than a mere indulgence, determinable at the will of the party by whom it was made. An agreement, without consideration, to enlarge the time of payment, will not discharge the surety. Reynolds *v.* Ward, 5 Wend. 501 ; Bank of Utica *v.* Ives, 17 Wend. 501 ; McLemore *v.* Powell, 12 Wheat. 554 ; Creath *v.* Sims, 5 How. 192 ; Leavitt *v.* Savage, 16 Maine, 72 ; Waters *v.* Simpson, 2 Gilm. 570.

The decree of the Circuit Court is reversed and the bill dis-missed.                                        *Decree reversed.*