## WAGMAN and others *vs.* HOAG.

Where a note is held as indemnity against the act or default of a third person, a suit may be brought directly upon it, without reference to the special agreement. It is otherwise where the liability of the defendant is solely upon an agreement collateral in terms.

Where a note payable at a future day is given by A. to B., to be held by B. as indemnity against loss that he may sustain by indorsing notes for C., in the absence of all proof to the contrary, *it seems* that it will not be considered as a continuing indemnity or guaranty against liability on notes indorsed after it becomes due.

An agreement must be explicit, to charge one with the debt of another by a continuing guaranty.

An agreement under seal, between the creditor and principal debtor, that a debt by simple contract shall be paid by the conveyance of lands to the creditor, and therein giving to the debtor fifteen days to fulfill on his part; if done without his knowledge and consent, discharges the surety.

Taking new security from the principal debtor, without giving time, does not discharge the surety.

Nor do mere proposals for security, unless they can be made use of to impute *laches.*

The offer of terms, to be a binding agreement and take effect upon an act of the debtor, and which he neglects to perform, will not discharge the surety.

A valid agreement to execute a release to the principal debtor, in equity, will discharge a surety.

Giving time or accepting a composition does not discharge the surety, if all remedies against him are reserved.

THIS suit was commenced in April, 1850, and the complaint was on two notes, dated April 1, 1845, signed by the defendant

Wagman v. Hoag.

and B. Losee, one for $2000, the other for $3000, both joint and several, and payable one year after date, to the plaintiffs or bearer, with interest. The defendant denied indebtedness, and alleñged that the notes were executed by him as surety for Benjamin Losee, without any consideration whatever, which the plaintiff knew. That the plaintiffs had indorsed two notes for Losee at the Saratoga County Bank, one for $2000 and the other for $1000, both dated February 11, 1845, payable at the Saratoga County Bank in one year, with interest ; and had indorsed other notes, and become liable to pay other demands, to the amount of $2000, which were to become due in a year from the date of these notes in suit, which were given for the sole purpose of securing the plaintiffs against loss on those demands, and were received by them as collateral security for such liability, and were to be delivered up as soon as Losee should discharge them. They were given to procure the plaintiffs to indorse certain notes to certain banks in the state, about that time made by L. to the order of the plaintiffs, and as collateral security to indemnify them against any liability they might incur. But they were to be considered void as soon as said liabilities were paid, taken up and canceled. And that all said notes were taken up and canceled by Losee. This defense was repeated in another form. The reply denied that the defendant was surety ; or that the plaintiffs knew the notes were without consideration ; or that they were without consideration. It denied that they were received to indemnify the plaintiffs against loss as stated, and alledged the plaintiffs had no recollection of indorsing, and denied they indorsed any such notes as set out in the answer, and denied that the notes were given to get them to indorse for L., as set out ; or that they were given as collateral security for indorsing said notes as stated. It denied they were so informed, or so accepted them, or that the notes were to be void on those being paid. It denied that any such notes were paid, or that the plaintiffs had suffered no trouble or expense, but alledged that they paid the same. It denied that the notes were received as indemnity against notes they had signed at the Ballston Spa or Saratoga Springs banks. But the plaintiffs alledged that the

notes were given and accepted to save harmless and indemnify the plaintiffs from previous indorsements for Losee, and from renewals to extend such paper, and from the use of their credit for future loans. That before that, they were liable to a large amount, to wit, $5000. And after the delivery of these notes, and before suit, they became liable for and paid $10,000, and upon paper within said arrangement. The plaintiffs alledged that they paid the notes specified in the answer ; and they specified a great many notes that they had signed or indorsed for Losee, which they had been obliged to pay. And they alledged that some judgments had been obtained against them and Losee, which were for his benefit, and which they had paid before this suit. They also set out one for $3038,96, recovered against them, and averred that Losee died insolvent.

The cause was referred, and on the trial it was shown that the plaintiffs were, during the years 1846, 7, 8 and 9, and up to the death of Losee, which took place on the 5th of June, 1849, liable for him, as joint makers with him, or with him and others, or as indorser for him. And proof was given to show that this liability in all amounted to several thousand dollars. It appeared that on the 11th of February, 1845, Losee executed two notes, one of $2000 and one of $1000, payable to the plaintiffs, and indorsed by them and by J. Knickerbacker, and payable one year after date, with interest. These were put into one note of $3000, dated February 27, 1846, signed by Losee, payable to the plaintiffs in three months, with interest, and at the Saratoga County Bank, and indorsed by the plaintiffs and then by Knickerbacker ; $500 was paid on this note when it became due, and another note given for the balance, indorsed by the plaintiffs and the defendant.

On the 7th of March, 1849, the plaintiffs and Losee entered into the following agreement :

"This agreement, made the 7th day of March, in the year of our Lord 1849, by and between John Wagman and Henry Wagman, of the town of Saratoga, in the county of Saratoga, of the first part, and Benjamin Losee, of the town of Northumberland in the county aforesaid, of the second part, witnesseth, that the

Wagman v. Hoag.

said parties of the first part covenant and agree to pay unto the said party of the second part the sum of $20,000, including a note of $1000 and interest, given to Robert Losee by the said parties jointly, not in judgment, the balance of said twenty thousand being in judgments recorded against the said parties in the county clerk's office in Ballston, in said county; provided the said Benjamin Losee shall cancel all other liabilities and incumbrances against the said parties and against the premises conveyed by deed hereinafter mentioned, incurred by the said Benjamin Losee. The said Wagmans further agreeing, on the fulfillment of said contract by said Benjamin Losee, to deliver up two promissory notes, executed by Benjamin Losee aforesaid and Benjamin F. Hoag, to the amount of $5000, which said notes are held by said Wagmans as collateral security for the liabilities of the said Benjamin Losee. And the parties to these presents agree to and with each other that the said Benjamin Losee shall have the full term of fift... days for the fulfillment of this contract on his part; and if the said ... of the second part shall fail of fulfilling said contract, this ... to be null and void, otherwise of full force and virtue. And it is mutually agreed between the parties to these ... that the consideration of $20,000 specified within is for the property contained in a deed this day executed by Benjamin Losee and wife to the said John and Henry Wagman, conveying t... undivided eighth part of the Saratoga Water Power Comp... together with all the said Losee's claims and demands again... said company, and the Victory Company. And the said John and Henry Wagman further agree to fulfill all the contracts made for lots sold by the said Losee, which the said Losee himself would be bound to fulfill.

In witness whereof, the parties to these presents have here... affixed their hands and seals, the day and year first above writt...

(Signed)     John Wagman.        [L. s.]
             Henry Wagman.       [L. s.]
             Benjamin Losee.     [L. s.]

A deed was at the same time executed by Losee and wife, of the property agreed by the contract to be conveyed, expressing

a consideration of $20,000, which was duly acknowledged on said 7th of March, 1849, and recorded in the clerk's office on the 21st of the same month. Proof was given tending to show that the deed was delivered to one Low as an escrow, but that Losee and the plaintiffs afterwards thought it best to have it put on record, to prevent future judgments becoming liens, and because Losee yet hoped to fulfill his agreement ; and that if Losee failed to fulfill his contract, the recording would do no harm. The witness further testified, that after the fifteen days, the contract was given up as hopeless. That he retained the contract until he came to the trial. That the parties to it concluded to have the deed recorded on the 21st of March. But it was afterwards admitted that Losee was in New-York city on the 21st of March. It appeared that Losee's personal property was sold in April, 1849, and that he died insolvent. He had a large amount of real property in his hands up to 1849, and considerable personal property in 1848. One Dennis testified, that on the 11th of February, 1845, Losee asked the plaintiffs to sign two notes, which they did, but they were not the notes in question, and that he said he would secure them by the defendant's note, and that he saw such a note in the plaintiffs' possession a week or ten days after, which was not one of these. The witness further testified, that in March, 1849, he and one Green went to see the defendant for the purpose of exchanging a note for $3000, which Green had against the plaintiffs, for the note of $3000 now in suit ; that they informed him over night of their business, and next morning, at an interview with him, the defendant asked to look at the notes, and then said they were larger than he supposed, and then told Green, " these notes are good for nothing in your hands, because they were given for collateral security ;" and said they, the Wagmans, " had lost nothing yet by Losee, but if they did lose by Mr. L. the amount of these notes, he was to pay the notes." Green testified that he was put upon his guard by what the plaintiffs said about exchanging the notes, and went with Dennis to see the defendant. That the defendant asked to see the notes, and Dennis, after some apparent hesitation, gave them to him, when he said they were larger than he

Wagman v. Hoag

supposed; "that he had an idea that it was one of $3000 instead of two notes. He then spoke to me, and said, Messrs. Wagman had not lost any thing yet, and that these notes would not be good for me." That he appeared to be on his guard, and witness paid particular attention. The testimony of the widow and daughter of Losee tended to prove that there was a paper signed by the plaintiffs and left with Losee, stating what demands these notes were security for, and, as they believed, they were security for the Knickerbacker notes. Nine notes, including the notes indorsed by Knickerbacker, (one of $2000, one of $1000, and one of $3000,) were found among the papers of Losee after his death. Beside the Knickerbacker notes, there was one of $1000, signed by Losee, payable to the plaintiffs or order, in three months, and indorsed by them, and dated April 14, 1845; another dated November 10, 1845, payable to one West in one year, and signed by Losee and the plaintiffs, for $1450; another for $1000, signed by Losee, payable to the plaintiffs three months after date, with interest, and indorsed by them, dated July 16, 1845; another of $1000, dated November 10, 1845, payable in four months to the plaintiffs, and indorsed by them; one of $700, payable to the plaintiffs in six months, with interest, and indorsed by them, dated January 31, 1846; and another of $900, dated June 21, 1846, payable and indorsed as aforesaid, in three months. Other facts in the case are noticed in the opinion of the court. The referee reported in favor of the plaintiffs for $2852,72, on which judgment was rendered, and the defendant appealed.

*E. H. Rosekrans* and *A. G. Paris*, for the defendant.

*W. A. Beach*, for the plaintiffs.

*By the Court*, HAND, J. The defendant insists that the plaintiffs should have declared upon the special agreement and not upon the notes. That is necessary sometimes, where the liability of the defendant is solely upon an agreement collateral in terms. (1 *Saund.* 211, *a. b. Northrup* v. *Jackson*, 13 *Wend.* 85.) But in this case, the suit is directly upon the notes, which

import consideration; and the questions in the case arise upon the defense. Many actions have been sustained upon notes, held as collateral security. (*See Chitty on Bills*, 845.)

The defendant further insists, that, as a presumption of law, the notes are not collateral security for any liability accruing after they became due. That it appearing that Losee paid all demands for which the plaintiffs were liable during that time, these notes cannot be held as a continuing guaranty for what the plaintiffs might become liable for after that period. Such, indeed, seems to have been the opinion of Lord Tenterden, in the case of *Blocksome* v. *Neal*, cited by Mr. Chitty in his work on bills, (*p.* 245, *n.*) If this is so, I very much doubt whether the evidence of the defendant's admissions, said to have been made on the 20th or 21st of March, 1849, is sufficient to rebut that presumption. Particularly, as one of two witnesses to that conversation, did not hear the important part of the admission; and the evidence of the widow and daughter of Losee tends to show that there was a writing between the parties, specifying for what demands these notes were indemnity; and that the Knickerbacker notes were among them. *Woodroffe* v. *Hayne*, (1 *C. & P.* 600,) is not opposed to *Bloxsome* v. *Neale;* for the same debt continued. The agreement must be explicit, to charge one with the debt of another, and particularly by a continuing guaranty. (*Russell* v. *Clark's Ex'rs*, 7 *Cranch*, 69. *Haywood* v. *Watson*, 4 *Bing.* 496. *Webb* v. *Dickinson*, 11 *Wend.* 62. *Whitney* v. *Groot*, 24 *Id.* 82. *Kay* v. *Groves*, 6 *Bing.* 276. 3 *B. & Ald.* 593. 5 *C. & P.* 795. 2 *Chit. R.* 205.) In this case, it appears that Losee had paid several thousand dollars, for which the plaintiffs were liable, after the date of this note and before the liabilities in question existed. Perhaps, however, the question, as to what demands they were applicable to, was in a degree one of fact for the referee.

But the objection that the plaintiffs gave time to Losee, it seems to me, is conclusive against them. The contract made on the 7th March, 1849, between the plaintiffs and Losee, was a suspension of all right of action, if any then existed, upon these notes, for at least 15 days. And no consent of the defendant,

Wagman v. Hoag.

express or implied, is shown or pretended. If this was so, by well settled principles, the defendant was released. (*Fellows* v. *Prentiss,* 3 *Denio,* 572. Bangs v. Strong, 10 *Paige,* 11. S. C. 7 *Hill,* 250. S. C. 4 *Comst.* 315. Combe v. *Wolf,* 8 *Bing.* 156. Miller v. *McCan,* 7 *Paige,* 451. Vilas v. *Jones,* 10 *Id.* 76.) Taking new security from the principal debtor, does not discharge the surety, unless time is given. (*Elwood* v. *Deifendorf,* 5 *Barb.* 398. U. S. v. *Hodge,* 6 *How.* 279. Gahn v. Neimcewicz' Ex'rs, 11 *Wend.* 312. Twopenny & Roys v. Young, 3 B. & C. 208. Com'rs of Berks Co. v. Ross, 3 *Binn.* 520. Theo. Pr. and Sur. 86, No. 164. Melville v. Glendenning, 7 *Taunt.* 126. Bell v. *Bank,* 3 M. & G. 258.) And the agreement, of course, must be valid and binding. (*Gahn* v. Neimcewicz, supra. Philpot v. *Briant,* 4 *Bing.* 717. Brickwood v. *Anniss,* 5 *Taunt.* 614. Burge, 204. Davy v. Prendergrass, 5 Barn. & Ald. 187. Sprigg v. Bank of Mount Pleasant, 14 *Peters,* 201.) And it seems, that the surety will not be discharged, if the contract reserves all the rights of the creditor against the surety. For in that case, the surety may pay immediately, and forthwith proceed against the principal; even though the creditor accept a composition. (*Ex parte* Glendinning, 1 *Buck,* 517. Smith v. Winter, 4 M. & W. 454. Boultbee v. *Stubbs,* 18 *Ves.* 20. Burge, 210. Kearsley v. Cole, 16 M. & W. 128. Owen v. Homan, 3 Eng. L. and Eq. R. 125. Gifford, ex parte, 6 *Ves.* 808. And see Maltby v. Carstairs, 7 B. & C. 735; S. C., 1 My. & K. 562, note; Hoveden's note to Rees v. Berrington, 2 Ves. Jun. 540; Hall v. Hutchins, 3 My. & K. 426; Reporter's note to Dunn v. Slee, 1 Holt's N. P. C. 399.) And it is said the creditor may, in some cases, retain securities in his hands, without such reservation. (*Theo. Pr. and Sur.* 145, No. 219. Thomas v. Courtnay 1 Barn. & Ald. 1. Note to Lewis v. Jones, 4 B. & C. 576. But see Hubbell v. Carpenter, 5 Barb. 523; S. C., 2 Id. 484; Owen v. Homan, supra.)

And a conditional agreement to take effect upon the act of the debtor, which he neglects to perform, will not discharge the surety. (*Burge,* 205.) Burge cites Vernon v. *Turley,* (1 M.

*&* *W.* 316,) and *Badnal* v. *Samuel,* (3 *Price,* 321;) but those were rather unaccepted propositions, than a binding stay to give time to fulfill. One was the case of bail, and the other of indorsee. Proposals for security bind no one, unless they can be made use of to impute laches. (*Eyre, Ch. J. in Walwyn* v. *St. Quintin,* 1 *B. & P.* 652. *Theo. Pr. and Sur.* 130, *No.* 209.) But a valid agreement with the pricipal debtor to execute a release, it seems, in equity will discharge the surety. (*Hawkshaw* v. *Perkins,* 2 *Swanst.* 539.) And so will a contract, which, in its consequences, may have the effect to give time. (*Burge,* 204.)

In this case, a deed was executed and delivered as an escrow; and the parties entered into an agreement under seal, one to sell, and the other to purchase, a large amount of real estate; to be paid for by taking up a note of $1000, still outstanding against the parties; and also, $19,000 in judgments against the parties; in all of which, probably, the plaintiffs were sureties for Losee; and he was to cancel all other liabilities and incumbrances against the parties and against this property. And, on so doing, these notes were to be given up; fifteen days being given to Losee to fulfill the contract. It is said, giving time for payment, must operate upon the instrument on which the surety is liable. (*U. S.* v. *Hodge,* 6 *How.* 282.) I think that is this case. Had the plaintiffs sued the note for $1000, and the judgments to the amount of $19,000, and then prosecuted Losee for those sums during the fifteen days, they would have violated their agreement. And I think they could not have prosecuted him, or the defendant, on these notes, within that time, in consequence of such payment. The defense here presents a stronger case than that in *Bangs* v. *Strong,* (*supra.*) There was a judgment against the surety; only one of the plaintiffs executed the agreement; no time was fixed for the fulfillment of the contract, and the judgment was to remain as security for the balance. Here the notes were to be cancelled. Both contracts were wholly executory. Here the deed was executed and delivered to a third person, and indeed recorded. In that case, not a day was given to make the conveyances, and yet, from the

Wagman *v.* Hoag.

nature of the case, the appraisal and conveyance of the land must necessarily take time. The principles of law that exonerated the surety there, and which were recognized and enforced by the chancellor, and the court for the correction of errors, and lastly, by the court of appeals, unquestionably apply to the case now under consideration. The fact that the plaintiffs were the sureties for, instead of the creditors of Losee, makes no difference in principle. (*Burge,* 159.) Nor can the plaintiff make the objection that the defendant may possibly be liable in equity to these creditors of Losee and the plaintiffs.

It has been said, that a subsequent consent will revive the liability. (*Smith* v. *Winter,* 4 *Mees. & Welsb.* 454. *Mayhew* v. *Cricket,* 2 *Swanst.* 85. *Tyson* v. *Cox, Tur. & R.* 395. *Burge,* 209.) Admitting this to be so, and taking the language of the defendant at the interview with Green and Dennis, in the most favorable view for the plaintiffs, there is no proof that he then had any knowledge of this transaction. ( *West* v. *Ashdown,* 1 *Bing.* 164.) The fifteen days had not then expired; the defendant lived in another county, and perhaps neither Green or Dennis knew of the transaction.

It was formerly supposed this defense could not be made at law. (*Davy* v. *Prendergrass,* 5 *Barn. & Ald.* 187. *Burge,* 211. *Sed vide Id.* 212, *and cases there cited.*) But that objection, if it would ever avail in an action on a note, will not now, under our present system. Whether there may not be cases in which the surety must seek relief as plaintiff, it is not necessary now to inquire.

The judgment must be reversed, and the cause sent back to the referee, with costs to abide the event of the suit.

[FULTON GENERAL TERM, September 6, 1852. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]