# WILLIAMS v. COVILLAUD AND MURRAY.

Mere extension of time to the maker of a promissory note, is not sufficient to discharge a surety, or endorser. To operate as such discharge, the agreement with the maker must be founded upon a valuable consideration, and be such as will suspend the right of action against the maker.

Where the holder of a note, after its maturity obtained from a stranger to the note a guaranty of its payment within sixty days: *Held*, that there was no presumption of law that the guaranty was taken for the benefit of the maker, or that it extended to him the time of payment.

Such a guaranty is an independent contract, which does not suspend any right of action of the holder of the note against its maker.

APPEAL from the District Court of the Tenth Judicial District, County of Yuba.

This was an action on a promissory note against the defendant Robert J. Murray, as maker, and Charles Covillaud, as endorser, brought under section fifteen of the Practice Act. The defendant Murray suffered default, but the defendant Covillaud filed an answer, and defended the action.

On the trial, the plaintiff gave in evidence the following promissory note, the genuineness of the signatures of the maker and endorser being admitted:

"$2500 00.                    MARYSVILLE, July 4, 1856.

"On or before the fourth day of September next, I promise to

pay Chauncey B. Williams, or order, twenty-five hundred dollars, with interest monthly at two and one-half per cent. per month until paid, for value received.      R. J. MURRAY."
[Endorsed] " C. COVILLAUD."

It was admitted that payment of this note was duly demanded of the maker Murray, at his place of business, September 6th, 1856, (the 7th being Sunday,) and payment by him refused, and that on the eighth day of September notice of such demand and refusal was served on the defendant Covillaud.

In defence to the action, the defendant Covillaud gave in evidence the following guaranty, signed by S. J. Field, written on the back of the above note, under the signature of C. Covillaud, the genuineness of the signature to which was admitted : " For value received, I guaranty the payment of the within note within sixty days from this date. October 29tn, 1856;" and then called as a witness Eugene Dupré, who testified that he was employed by an agent of Wells, Fargo & Co. to protest the note at the termination of the sixty days mentioned in the guaranty of Field, and did so protest it, and gave due notice. He further testified as follows :

" After I had protested this guaranty, Williams, the plaintiff, came to my office, to inquire, as he said, about the note and protest, and he stated that he had sent the note down to Wells, Fargo & Co., to have it collected and protested.  I asked him if Covillaud knew of the guaranty of Field, and he replied that Covillaud did not know of it, that he was aware of.  He further stated that he had extended the payment sixty days in consequence of this guaranty, and that Murray and Field said it was all right."

On his cross-examination, the witness testified that the only language Williams used, so far as Murray was concerned, was this, that " Murray and Field said it was all right."

The plaintiff then called as a witness the defendant Murray, who testified as follows :

"I never saw this guaranty of Field until months after it was given.  It was not given at my request, nor upon any arrangement with Williams, the holder of the note.  I did not make any contract with Williams for the extension of the note, nor was this guaranty given upon any agreement whatever with Williams and myself, or with Field and myself.

" The first time I ever knew of its existence, to the best of my recollection, was when Dupré came to protest the note at the termination of the sixty days mentioned in the guaranty."

On his cross-examination, the witness further testified as follows :

" When the note first became due, Williams came to my office and presented the note.  I told him it was not convenient to

pay it then, and he agreed to extend its payment—that is, he said he was not pressed for the money, and would wait a little. I never gave him any new security for this delay, nor did I ever give him anything whatever. This was in September, after the note became due. I never knew anything of the guaranty of Field until long after it was given, and it was not given upon any request or agreement between Field and myself, or between Williams and myself."

The Court gave the following instructions to the jury :

" 1. That an agreement giving time to pay a note, to operate as a discharge of an endorser, must be,

" *First*—An agreement made by the holder and the maker of the note.

" *Second*—An agreement founded upon a valuable consideration, and operative in point of law.

" *Third*—An agreement which suspends the right of the holder of the note for the time to sue the maker.

" 2. That the agreement with the holder of the note in suit, Williams, and Field, who was not a party to the note, did not operate as a discharge of the endorser, Covillaud; that this agreement is to be regarded as an independent contract of guaranty between Williams and Field."

The jury found a verdict for the defendant Covillaud. The plaintiff, upon notice, moved to set this verdict aside, and for a new trial, on the ground of the insufficiency of the evidence to justify the verdict; and that it was against the evidence, and against law, and was rendered in direct disregard of the instructions of the Court.

The Court, after argument, overruled the motion; its ruling was excepted to—and from its order entered thereon, the appeal is taken.

*Solomon Heydenfeldt* for Appellant.

The determination of this case involves the consideration of the nature of an agreeement giving time to pay a note, which will operate to discharge an endorser, and between whom it must made.

I. An agreement giving time to pay a note, to operate as a discharge of an endorser, must be one made between the holder and the maker of the note, and without the consent of the endorser.   Story on Promissory Notes, § 413 ; Chitty on Bills, 410 ; Lyon *v.* Holt, 5 Meeson & Welsby, 252.

In the case at bar, there was no agreement between Murray, the maker, and Williams, the holder of the note.   Murray did not even know of the existence of the guaranty until the expiration of the sixty days mentioned therein.

II. An agreement, giving time to pay a note, must be founded upon a valuable consideration, to operate as a discharge of an en-

dorser.   Story on Promissory Notes, § 415; Philpot v. Briant, 4 Bing. R., 717; McLemore v. Powell, 12 Wheaton, pp. 554, 556, 558.   The valuable consideration must move from the maker.

III.  An agreement giving time to pay a note, to operate as a discharge of an endorser, must be one which suspends the right of the holder, for the time, to sue the maker.   Waters et al. v. Simpson et al., 2 Gilman, 574; Chitty on Bills, 410; Hewett v. Goodrich, 2 Carr. & Payne, 468.

In the present case, there was no agreement with the maker, and therefore none could be set up by him in case of suit brought. The guaranty of Field, so far as the maker is concerned, was res inter alios acta.   See the observations of Lord Abinger in Lyon v. Holt, 5 Exchequer R., 252.

IV.  The guaranty of Field does not refer to the payment of the note by the maker, any more than it does to its payment by the endorser.

The guaranty is written on the back of the note, directly under the endorsement of C. Covillaud.   At the time it was written, Covillaud was charged as endorser, and was equally liable to the holder with the maker.   The guaranty does not specify by whom the payment is to be made, and is as applicable to Covillaud, the endorser, as to Murray, the maker, and to both as to one.   If this be so, then it does not lie in the mouth of Covillaud to object that he was prejudiced by a guaranty that a note upon which his own liability was fixed, would be paid.

It is clear, from the whole case, that the agreement of Field is an independent contract of guaranty; and, like any other independent contract, in no respect affects or impairs the liabilities of the parties to the note.   There is no evidence, or pretence of evidence, that Williams had ever agreed, in consequence of it, to postpone the collection of the note a single hour.   Even Dupré, testifying to the admissions of Williams, does not state that Williams said he had ever agreed to extend the time of payment: but only that Williams, after the expiration of the sixty days specified in the guaranty, in speaking of it, stated that he had (referring to what had already been done) extended the payment in consequence of the guaranty.

The law of this case entitles the plaintiff to judgment, and was correctly laid down in the instructions of the Court, and as there was no disputed question of fact upon which a jury could pass, that, however found, could possibly give the defendant a verdict—the Court might very properly, upon its own motion, and certainly should, without hesitation, upon the motion of the plaintiff, have set the verdict aside, and granted a new trial.   In the second instruction, the Court informed the jury that the guaranty of Field did not operate to discharge the endorser Covillaud: and thus the only question upon which the defendant relied as a defence, was decided by the Court below—not left to

the decision of the jury. By its instruction, the Court below has made it record that there was no agrement with the holder, and that there was no evidence of any such agreement, and, consequently, the instruction was equivalent to a direction to the jury to find for the plaintiff.

It follows, that their verdict was directly against the decision of the Court, and could only result from contumaciousness on their part. It is in this respect that the error of the Court below, in refusing a new trial, is palpable. When a jury finds against the direction of the Court, the rule is that a new trial will be repeatedly granted—otherwise, a party has no chance of justice. The rulings being all in his favor, he can not complain of error in law; and it as strongly the duty of the Court to protect him against a contumacious jury, as to decide the law correctly; and whenever a Court refuses, in such a case, to vindicate its own instructions, the Appellate Court will closely scan the evidence to determine in favor of a new trial. See Speck v. Hoyt, 3 Cal., 413.

*E. D. Wheeler* for Respondents.

I. If the holder of a promissory note, by an agreement with the principal, either express or implied, varies the terms of the contract, by enlarging the time of performance, without the assent of the surety, the latter is discharged.

I will consider under this head :

*First*—The legal effect of the guaranty.

The guaranty itself is brought into Court by the plaintiff. He sues upon the face of the note, and seeks a judgment against the endorser, Covillaud. We turn the note over, and find a written agreement on the back of it, whereby the holder, the plaintiff in this case, agrees to wait for the payment thereof for the space of sixty days, next ensuing October 29th, 1856, although the note was due September 6th, nearly two months prior to his agreement to extend the time for payment. In the absence of proof of an express agreement to extend the time, the taking of fresh security, payable at a future day, implies an enagagement to wait till it becomes due. In the case of Hill v. Bostick, 10 Yerg., 415, the Court say : " It is certainly true, that if the holder of a note takes a fresh security and agrees to give time, he thereby discharges the endorsers. If there be no express agrement for time, but a further security payable at a future time, is received, that would in general imply an engagement to wait till it becomes due." Baker v. Walker, 14 Mees. & Wels. Exchequer R., 468.

The law declares that if the holder extends the time of performance, without the assent of the surety, then the latter is thereby discharged. It also declares that the taking of fresh se-

curity, payable at a future day, implies an agreement to wait till the expiration of the time mentioned in the guaranty.

*Second*—The conduct of the plaintiff himself.

There is no evidence in the record which raises a suspicion that the plaintiff did not consider that he had made a fair and complete agreement to wait till the expiration of the sixty days.

The first strong circumstance going to show that such was his intention, is the very fact of his acceptance of this guaranty, payable in sixty days.

The second strong circumstance is, that at the termination of the sixty days, he sent the note through Wells, Fargo & Co., to a notary public, to be protested. This, most certainly, demonstrates that he thought he had no right to demand the money till the sixty days had run out.

And the third strong circumstance is, that he, the plaintiff, told the notary "that he had extended the payment sixty days, in consequence of this guaranty."

*Third*—Whether the maker of the note, R. J. Murray, was a party to this agreement for extension.

This appears from the statement of the plaintiff, as testified to by Dupré.

[The counsel here commented upon the testimony in the case.]

II. An agreement giving time to pay a note, must be founded upon a valuable consideration, to operate as a discharge of an endorser.

This is the second proposition of the appellant. From the principle therein contained, I do not dissent; but insist that in the present case, the agreement to extend was for a valuable consideration.

III. An agreement giving time to pay a note, to operate as a discharge of an endorser, must be one which suspends the right of the holder, for the time, to sue the maker.

This is the third proposition of the appellant. It is hardly necessary to consider this proposition at all, because Williams did make such an agreement as suspended his right to sue, at the time he took the guaranty and agreed to extend the time for sixty days.

But it is not necessary, under the authorities, that the agreement to extend the time should be such a one as could be pleaded in bar to the action on the note; a mere equitable agreement is sufficient to discharge the endorser. Greely v. Dow, 2 Met., 176; Boston Hat Manufacturing Company v. Messinger, 2 Pick., 233; Norton and Williams v. Roberts and Latham, 4 Mon., 498.

BALDWIN, J., delivered the opinion of the Court.

This case comes before this Court on an appeal from a motion for a new trial overruled in the Court below.

On the fourth of July, 1856, Murray made a note in the usual

form, payable to plaintiff, or order, and upon this note C. Covillaud, the defendant, endorsed his name. The note was made payable on the fourth of September after. It was protested, and notice regularly given to defendant.

The defendant showed, in defence, that the note bore on the back of it the guaranty of Field, in these words : "For value received, I guaranty the payment of the within note within sixty days from date. October 29, 1856." Plaintiff read his note, and rested. For defence, Eugene Dupré testified that witness was employed by an agent of Wells, Fargo & Co., to protest the note at the maturity of the sixty days mentioned in the guaranty, and did protest it, and gave notice. After witness had protested the guaranty, the plaintiff came to the office of witness, and said that Covillaud did not know of the guaranty, that plaintiff was aware of. He further stated that he had extended the payment sixty days in consequence of the guaranty, and that Murray and Field said it was all right.

Murray testified that he never saw the guaranty until months after it was given. It was not given at his request, nor upon any arrangement with Williams, the holder of the note. Witness did not make any contract with Williams, the holder, for the extension of the note; nor was this guaranty given upon any agreement whatever with Williams and himself. The first time he ever knew of its existence, to the best of his recollection, was when Dupre came to protest the note at the termination of the sixty days.

The principle of law applicable to these facts, is thus stated by Mr. Parsons, in his work on contracts, (1 vol., 512 :) "It is well settled, that mere delay, without fraud, or agreement with the principal, does not discharge the surety. (Hunt v. United States, 1 Gallison, 32; Naylor v. Moody, 3 Blackf., 93; Hunt v. Bridgham, 2 Pick., 581; Townsend v. Riddle, 2 New Hamp., 448; Leavitt v. Savage, 16 Maine, 72; Freeman's Bank v. Rollins, 13 Maine, 202; Johnston v. Searcy, 4 Yerg., 182; Dawson v. Real Estate Bank, 5 Ark., 283; Montgomery v. Dillingham, 3 S. and M., 647; People v. White, 11 Ill., 342; Dorman v. Bigelow, 1 Flor., 281.) To have such effect, there must be an actual agreement between the creditor and the principal, to extend the time of payment. (Hutchinson v. Moody, 18 Maine, 393; Fuller v. Milford, 2 McLean, 74; Greely v. Dow, 2 Met., 176; Wagman v. Hoag, 14 Barb., 232.) And the agreement must be upon sufficient consideration, and must amount in law to an estoppel upon the creditor sufficient to prevent him from beginning a suit before the expiration of the extended time; and when such agreement is made, the surety is discharged. (Leavitt v. Savage, 16 Maine, 72; Bailey v. Adams, 10 New Hamp., 162; Hoyt v. French, 4 Foster, 198; Joslyn v. Smith, 13 Verm., 353; Wheeler v. Washburn, 24 Verm., 293; Chace v. Brooks, 5 Cush., 43; Hoff-

man *v.* Coombs, 9 Gill, 284; Payne *v.* Commercial Bank, 6 S. and M., 24; Newell *v.* Homer, 4 How., (Miss.,) 684; Coman *v.* State, 4 Blackf., 241; Farmers' Bank *v.* Raynolds, 13 Ohio, 84; Haynes *v.* Covington, 9 S. and M., 470; Anderson *v.* Marmon, 7 B. Monr., 217; Sawyer *v.* Patterson, 11 Ala., 523; Bray's Ex'rs *v.* Brown, 22 Ala., 263; Mass *v.* Hall, 5 Exch., 46; Phillips *v.* Rounds, 33 Maine, 357; Thomas *v.* Dow, Ib., 390; Turrill *v.* Boynton, 23 Verm., 192; Bangs *v.* Strong, 4 Coms., 315; Miller *v.* Stern, 12 Penn., 383; Mitchell *v.* Cotton, 3 Florida, 134; Burke *v.* Cruger, 8 Tex., 60.) Therefore, a surety in a *specialty* is not discharged by a parol agreement between the creditor and the principal, on the day the debt became due, to allow the principal one year more for payment. (Tate *v.* Wymond, 7 Blackf., 240.) But the agreement for extension must not only be valid and binding in law, but the time of the extension must be definitely and precisely fixed. (Miller *v.* Stern, 2 Barr, 286; Parnell *v.* Price, 3 Rich., 121; Wadlington *v.* Gary, 7 S. and M., 522; Gardner *v.* Watson, 13 Ill., 347; Waters *v.* Simpson, 2 Gilman, 570; People *v.* McHalton, Ib., 638; McGee *v.* Metcalf, 12 S. and M., 535.) And the sureties are not discharged by the giving of time to the principal, if a right has been reserved, in the contract, to proceed against the sureties at any time. (Wyke *v.* Rogers, 12 E. L. and E., 163; Neile *v.* Hoag, 24 Verm., 46; Hubbell *v.* Carpenter, 1 Seld., 171; Wagman *v.* Hoag, 14 Barb., 232.)"

Considering this irregular endorsement sufficient to charge the defendant, as an ordinary endorser, as seems to be agreed by the counsel on both sides, and conceding, for the case, that there is no distinction as to the point of defence—the extension of time to the maker—between an endorser and surety, the question arises, whether the finding of the jury, upon the facts stated, should stand. To set aside the verdict, it must be clearly against the evidence. It has been seen, that the mere extension of time to the maker is not a sufficient plea to discharge the surety, or endorser. These things must concur : an extension of time, on an agreement with the maker, founded upon a valid consideration, and such as will suspend the right of action against the maker. Applying these principles to the proofs, we come to inquire whether the facts make out the defence. It is the duty of the Court and the jury to reconcile the evidence, when it can be done, and to give effect to all of it, when the nature of the case will admit of such a disposition. It is very true, as the counsel for the respondent suggests, that a jury are not bound to accept positive statements of witnesses, though swearing directly to the fact, against the weight of circumstances. But when the positive testimony is not really inconsistent with those circumstances or the inference naturally drawn from them, but the direct testimony and the circumstances may reasonably be made to harmonize, a verdict rendered against the direct proofs

would, in effect, be a verdict with nothing to support it. How stands the case in this view? The point of inquiry, in this aspect of the case, is not, we repeat, whether there was an agreement for this extension of time to the maker: this fact, though far from clear on the proofs, may be here safely conceded. But the real question is, was this extension given *on agreement by the holder with the maker?* And of this there is not the slightest legal proof, in the record, and the evidence, as we have seen, is positive and direct to the contrary. We say, there is no legal proof. It is true that the counsel relies with confidence upon several cases which, he supposes, raise the presumption of an extension to the maker from the taking of fresh security. Hill *v.* Bostick, (10 Yerger, 415,) is one of the cases. The Court say: "It is certainly true that if the holder of a note take a fresh security, and agree to give time, he thereby discharges the endorsers. If there be no express agreement for time, but a further security, payable at a future time, is received, that would, in general, imply an engagement to wait until it becomes due." But these general expressions must be construed in reference to the facts which elicited them. The Court did not mean to say that if one man guaranties another's note, past due, to be paid within a given time, this guaranty implies an *agreement by the holder with the maker of the note* to wait on the maker until the time limited in the guaranty. The case in Yerger was that of a new contract, made between the maker and the holder. The fresh security was the new contract with the maker. So, in Baker *v.* Walker, (14 Mees. and Wels. E. R., 468,) the fact was that the creditor held a judgment, and took *from his debtor* his promissory note, payable at a certain time, and it was held that he thereby entered into an agreement to suspend his remedy for that period. Putnam *v.* Lewis, (8 Johns., 389,) holds that the acceptance *of the debtor's* promissory note is a giving of time on the debt until the note is due. (See, also, 21 Wendell, 451.)

It has been seen that the guaranty in this case does not purport to secure time to the maker, or to be otherwise made for his benefit. He was no party to it. It was an independent agreement. It was made after the maturity of the note. It was not founded on any consideration connected with the execution of the note, so far as appears by the record. From anything appearing on the face of the writing, it may as well have been given for the benefit of Covillaud as of Murray. It stipulated for no time for either maker or endorser. It purports to be given on a consideration, running directly from the plaintiff to the guarantor. So far as we can see, it was the interest of the guarantor that the money should be made as soon as possible out of the other parties to the note, as thereby the liability of the guarantor would be saved. There is no presumption of law that a guaranty like this is for the benefit of the maker. It is

like any other contract which is undertaken for a money consideration. The inference, if there is any, is, that like other transactions of business, the parties entering into it do so because it is to their interest. If A has paper which he desires to be made more secure by a new contract, he may, as is often done, give another a premium to guaranty it; or the other may be, in some way, interested in insuring it, or some moral, honorary, benevolent, or friendly motive may influence him; or, being agent in taking the security, and having full confidence in the goodness of the note, he is willing to satisfy the principal by guarantying it. But this motive, whatever it may be, is not guessed at by the law, which does not raise a presumption from such loose surmises, some of which may be more or less probable, but leaves the fact to be established by proof, when necessary. Presumptions are the conclusions which the law draws from acts which leave no reasonable question of the intent, or motive. But neither in fact nor in law, would it be logical to infer, from the mere fact that one man guaranties another's contract, to be performed by a given time, on a consideration from a third, that this guaranty was for the benefit of the contractor, or for an extension to him of the time of the performance of the contract. Still less that this contract was a contract *with* the contractor, or was the consideration for one.

This being the case, the greater portion of the argument of the counsel for the respondent is left without support. The mere fact that the holder, having a good note satisfactorily guarantied and drawing a fair rate of interest, rests without suit until the period of guaranty has passed, is not a very pregnant circumstance to prove that there had been a contract made with the maker to wait until that period. It seems he waited nearly two months without any guaranty. Nor is the loose testimony as to the declarations made by the holder and others, of much weight. Doubtless, when Williams took the guaranty for the payment of the note within sixty days, he considered that the note was extended for that time, intending to look to the guaranty in the first place, instead of suing at once; and this he probably would have done whether bound to so wait or not.

The whole argument on the facts may be thus condensed : Williams held an overdue note of Murray, endorsed by Covillaud. Field guarantied the payment in sixty days after date of guaranty; Williams said he had extended the note on the guaranty; no suit was brought on the note until after the sixty days. Inference : that this guaranty was given for the purpose of the extension, *and* as a consideration for it; and, inference again : that this was agreed (not understood) between Williams *and Murray,* (not Williams and Field,) on this consideration; and that these inferences are strong enough to prevail against the positive testimony of an unimpeached witness that there was no such

Williams *v.* Covillaud and Murray.

agreement. It will be seen that the inference is just as strong that Field guarantied for Covillaud as for Murray; for though Williams said Covillaud knew' nothing of the guaranty at the time it was given, Murray says the same thing of himself. The mere statement of the case in this form is enough to show the error of the ingenious argument of respondent's counsel. It seems to us that it can scarcely be contended that this slender material of fact raises the proof of all the terms of a contract on good consideration, made for a definite extension of time, between the holder of the note and Murray, and which contract estopped Williams from suing on this note, especially in the face of positive, unimpeached testimony to the contrary. It will be seen that even if the guarantor bargained expressly for this extension for Murray, this would not be sufficient, for this would be a mere collateral contract, not estopping the holder from suing. (See the cases before cited.) To illustrate the insufficiency of this proof to justify a finding of the fact of the required contract, it is only necessary to put it in the form of a special plea or agreed statement, and its insufficiency at once appears.

The positive testimony, then, is in substance uncontradicted. A witness testifies that no agreement was made with the maker to extend the time, and we have seen that the circumstances relied on by the respondent are really not inconsistent with the direct proof.

It must be remembered that this is purely a technical defence. It is not pretended that this was not a just debt of Covillaud, or that he was not legally bound to pay it, or that this extension of time has operated in the slightest degree to his injury. He stands on strict law for his plea. He can not complain that he is held to strict law—that he should be required to yield to technical exactness, when upon technical right he relies for his escape from this liability. To this standard we have subjected his case in this examination of it, and we think we have shown that he has not come up to the legal requirements in his proofs.

We are of opinion that the verdict was clearly contrary to the evidence.

Judgment reversed, and cause remanded.

TERRY, C. J.—I concur in the judgment.

[Field, J., having been counsel in the Court below, did not sit in the case.]