## KANOUSE and WHIGAM vs. DORMEDY.

In a suit on a bond given to discharge an attachment pursuant to 2 R. S. 12, § 55, the plaintiff is not bound to show the facts necessary to give jurisdiction to the officer who issued the attachment, or that the case was one in which an attachment might be issued according to the statute.

And where, in such an action, the attaching creditor's demand arose upon a contract made out of this state, and the plaintiff omitted to aver, and failed to prove, that the attaching creditor was a resident of this state, *held* that he was, notwithstanding, entitled to recover.

Whether, if the defendant had shown affirmatively that the creditor was a non-resident, it would have afforded a defence to the action, *Quere. Per* WALWORTH, *Chancellor,*

ON error from the supreme court, to review a judgment affirming one rendered by the court of common pleas of the city and county of New-York. In the last mentioned court, Dormedy sued Kanouse and Whigam in debt on a bond executed by the defendants, pursuant to 2 R. S. 12, §§ 55, 56, for·the purpose of discharging an attachment which had been issued at the instance of the plaintiff, against Kanouse, as an absent debtor, Whigam executing the bond as surety. `It was in the penalty of $240, conditioned for the payment to each attaching creditor of " the amount justly due by such debtor to him at the time when he became an attaching creditor," &c. The declaration set forth the proceedings to obtain the attachment, and averred that Kanouse was a resident of the state of New Jersey, and that the plaintiff had a demand against him of one hundred and twenty dollars and upwards, over and above all discounts, arising upon contract, for money lent and work and labor done and performed in Jersey City, in the state of New Jersey. It stated that the associate judge, to whom the application was made, issued his warrant of attachment to the sheriff of the city and county of New-York, commanding him to attach the property of Kanouse, &c., and directed the publication of notices according to the statute; and that such proceedings were thereupon had, that afterwards, on the day of the date of the bond, Kanouse applied to

the judge to discharge the warrant, and for that purpose he and Whigam executed the bond, and the judge thereupon made an order discharging the warrant; that Kanouse, at the time the application for the attachment was made, was justly indebted to the plaintiff in one hundred and twenty dollars, for work, labor, &c. Breach, that the defendants have not paid the plaintiff the amount of the aforesaid indebtedness. Pleas. 1. *Non est factum ;* 2. That Kanouse was not indebted to the plaintiff. The defendants also gave notice that they would prove on the trial that the plaintiff (as well as Kanouse) was a resident of the state of New Jersey when the attachment was applied for, and during the pendency of the proceedings thereon, and that the indebtedness of the plaintiff accrued in that state.

On the trial in the common pleas, the execution of the bond was proved, and both parties gave evidence touching the alleged indebtedness of Kanouse to the plaintiff. Before the cause was submitted to the jury, the defendants' counsel requested the court to charge, that there being no evidence, and no averment in the declaration, that the plaintiff—the attaching creditor—was a resident of this state, and it appearing that the contract out of which the indebtedness arose was made in New Jersey, the plaintiff was not entitled to recover. The court refused to charge as requested, but submitted to the jury the evidence relating to the existence of the indebtedness, advising them to find for the plaintiff if such indebtedness were proved. The defendants excepted, and the jury gave a verdict for the plaintiff, upon which the court rendered judgment, which, on error brought by the defendants, was affirmed by the supreme court. The defendants then brought error to this court.

*J. M. Martin,* for the plaintiffs in error. 1. To authorize a proceeding under this statute against an absent debtor, the indebtedness must have arisen upon a contract made in this state, or the creditors must reside within this state. (2 *R. S.* 3, § 1, sub. 2; *In the matter of Fitzgerald,* 2 *Caines' R.* 318; *Ex parte Schroeder,* 6 *Cowen,* 603; *In the matter of Fitch,* 2 *Wend.* 298.) 2. The plaintiff was bound to show affirma-

tively that the case was one in which an attachment might, by
law, be issued. As he failed to do so, the officer is not shown
to have had jurisdiction, and the proceedings, including the bond,
were, upon well settled principles, void. (*Vose v. Deane*, 7
*Mass.* 280; *Commonwealth* v. *Loveridge*, 11 *id.* 337; *Same*
v. *Otis*, 16 *id.* 198; *People* v. *Brown*, 23 *Wend.* 47; *Dakin*
v. *Hudson*, 6 *Cowen*, 221; *Lowndes* v. *Moses*, 1 *McCord's Law
Rep.* 420.)

*J. B. Scoles*, for the defendant in error, contended that the
bond having been given voluntarily, to procure the discharge
of the warrant, the question as to the legality of the proceeding
against Kanouse was immaterial, and could not be made a sub-
ject of inquiry in a suit on the bond, and that all that was said
in the declaration touching the proceedings before the associate
judge was surplusage. But if this were not so, he said that the
*onus* of showing the existence of a fact which rendered the war-
rant invalid rested on the defendants, who had offered no proof
upon that point. He cited *Ring* v. *Gibbs*, (26 *Wend.* 502, 510;)
and *Johnson* v. *Laserre*, (2 *Ld. Ray.* 1459.)

THE CHANCELLOR. This suit, in the court of common
pleas, was brought on a bond given by Kanouse and Whigam
to Dormedy, upon the discharge on an attachment against Ka-
nouse as a non-resident debtor. The statute authorizes such an
attachment where the debt was contracted in this state, or where
the same is due to a creditor residing within this state at the
time of the application, although the debt was contracted else-
where. In this case, it appeared that Kanouse resided at Jersey
City, and it is fairly to be inferred from the testimony that the
debt was contracted there. But there was no evidence as to
whether the attaching creditor did or did not reside in this state
at the time the attachment was issued. The only question in
this case, therefore, is whether, in this suit upon the bond given
upon the discharge of the attachment, and under the pleadings,
the plaintiff was bound to prove that he was a resident of this
state at the time the attachment issued; or whether, in the ab-

Kanouse *v.* Dormedy.

sence of any proof to the contrary, the court will not presume the attachment was regularly issued? Whether it would be a good defence to a suit upon such a bond, for the defendants to show affirmatively, that the officer who issued the attachment had no jurisdiction or authority to issue the same, and that Kanouse was compelled to give the bond to obtain possession of his property, which had been improperly attached, is another and a different question.(a)

Had the bond in this case been taken in the name of several attaching creditors, having separate debts due to them, and a suit upon the bond had been brought in the name of one of them only, as authorized by the original fifty-seventh section of the statute, (2 *R. S.* 72, § 60, *3d. ed.,*) it might have been necessary for him to show that he was a regular attaching creditor, to enable him to sustain a suit upon the bond, in his own name alone, contrary to the course of the common law. But in this case the bond was given to Dormedy as the sole attaching creditor, with a condition which would have enabled him to maintain a suit thereon at common law, independent of any statutory provision on the subject.

I am not aware of any principle of the common law which requires the obligee in such a bond, when he brings a suit thereon against the obligors, to do any thing more in his declaration than to state the giving of the bond by the defendants, and to assign proper breaches of the conditions to show that the bond has become forfeited; and to enable the jury to assess the damages upon such breaches, as required by the statute relative to suits upon bonds other than for the payment of money. And where the execution of the bond is admitted or proved upon the trial, and the breach of the condition thereof is also proved, the *onus* of establishing the fact that the bond was improperly obtained, by coercion or otherwise, as by an illegal and unauthorized imprisonment of the defendants, or in consequence of an illegal detention of their goods under color of an attachment

---

(a) See *Homan* v. *Brinckerhoff*, (1 *Denio*, 184.)

granted by an officer who had no authority to issue the same, is necessarily thrown upon them. Here, if the defendants had pleaded in bar of the plaintiff's action, that at the time of the application for the attachment, the attaching creditor was not a resident of this state, and that Kanouse was not indebted to him upon a contract made in this state, instead of giving notice of such defence under their plea of *non est factum*, and issue had been taken on such special plea, the *onus* of proving the facts stated in that plea would unquestionably have been thrown upon the defendants. And the result must be the same, where they attempt to establish such a defence under the notice given with their plea of *non est factum.*

The cases referred to, from the decisions in Massachusetts, depended upon an entirely different principle. *Vose* v. *Deane*, (7 *Mass. Rep.* 280,) was a proceeding by *scire facias* by individuals upon a recognizance for the appearance of Harris to answer a charge against him as a receiver of stolen goods which belonged to the plaintiff. This was not a common law record, upon which the injured party could bring a *scire facias.* And as the court decided that the statute authorizing such a recognizance for the benefit of the party whose goods had been stolen, only extended to the case of the thief himself, and not to the receiver of the stolen goods, the recognizance had no more validity as a record, than if it had been entered into before the constable. So in the case of *The Commonwealth* v. *Loveridge*, (11 *Mass. Rep.* 337,) a justice of the peace had taken a recognizance for the appearance of a person charged before him with homicide, where the statute had directed him to commit to prison persons guilty, or suspected to be guilty, of that and other capital offences ; and only authorized him to hold to bail in the case of lesser offences. And the want of jurisdiction appearing upon the face of the recognizance itself, the court very properly held that the recognizance was void. In the case of *The Commonwealth* v. *Otis*, (16 *Idem*, 198,) where a justice of the peace had assumed the power to bail a felon, after conviction, and contrary to the statute relative to the powers of justices to take bail, a similar decision was made, in a proceeding by *scire facias* upon

the void recognizance; which recognizance, upon its face, showed that the justice had no authority to take it.   So in the case of *The People* v. *Brown*, in our own supreme court, (23 *Wend. Rep.* 47,) where the recognizance had been taken by a single magistrate, when the statute required the concurrence of two to bail the offender, and that fact appeared from the plaintiff's declaration in the action upon such recognizance, the court very properly decided that the recognizance was void.   These recognizances are in the nature of records; and when taken by a justice of the peace, or a court of inferior jurisdiction, to sustain an action or proceeding by *scire facias* upon them, the plaintiff must show that such justice or inferior court had jurisdiction of the case or proceeding in which the same was taken.   And it must also be a case in which he was authorized by law to take such a recognizance.   But in a suit upon a bond in the name of the obligee, against the obligor therein, and which bond upon its face does not appear to have been improperly or illegally taken, it is sufficient for the plaintiff to declare upon the bond itself in the usual manner, where he only seeks to obtain a common law judgment thereon, and to assess his damages for the breach of the condition.   The case is otherwise where a new remedy, or a new cause of action, is given by statute, and the plaintiff wishes to avail himself of that.   For, to do so, he must bring himself within the statute by showing all the facts necessary for that purpose.   (*Dakin* v. *Hudson*, (6 *Cowen's Rep.* 221; *Lowndes* v. *Moses*, 1 *McCord's Law Rep.* 420.)

This being a common law suit, I think the plaintiff in the court of common pleas was entitled to recover upon the facts which were produced in evidence by him.   There was, therefore, no error in the charge of the judge who tried the cause, and the judgment of the supreme court should be affirmed.

BARLOW, PORTER, and SPENCER, Senators, also delivered written opinions in favor of affirming the judgment, upon the same grounds, in substance, stated in the opinion of the chancellor.

Kanouse *v.* Dormedy.

WRIGHT, Senator.   This case presents the single question of jurisdiction—which, in my opinion, is one of considerable importance.   The real and personal estate of a debtor may be attached for the payment of his debts, in certain cases, and among others, " Whenever any person, not being a resident of this state, shall be indebted on a contract made within this state, *or to a creditor residing within this state*, although upon a contract made elsewhere." (2 *R. S.* 3, § 1.)   The attachment in this case was issued under the second subdivision, and upon the ground of the *non-residence* of the debtor.   In order to obtain the attachment it was necessary to prove before the officer to whom the application was addressed, affirmatively and distinctly: 1. That the debtor was a non-resident.   2. That the creditor was a resident, or, if he was a non-resident, that the demand arose upon a contract made within this state.   These are jurisdictional facts, to be established by the party seeking the summary process of attachment; and the omission of either fact in the proceedings, would be a fatal defect, upon a *certiorari* issued to review the acts of the magistrate.   It is a familiar and well established principle of the law, so well settled that a reference to authorities is wholly unnecessary, that all inferior and subordinate tribunals, whose proceedings are regulated and defined by statutory provisions, must pursue strictly the requirements of the statute; and every fact made necessary by the legislature to confer jurisdiction must affirmatively appear.   For instance, the statute gives the remedy only in cases of demands arising upon contract or upon judgment or decree rendered within the state, amounting to one hundred dollars or upwards.   (*Id.* § 3.)   Suppose the attaching creditor should omit to state in his affidavit before the judge, that his demand arose upon contract, judgment or decree amounting to one hundred dollars, does any one believe that the proceedings under the attachment issued upon such an affidavit could be sustained for any purpose?   In the matter of *Hurd*, (9 *Wend.* 465,) the supreme court held that under this statute administrators could not be proceeded against for a demand due from their intestate, and they set aside the proceedings upon application of the administrators, after the appointment of trustees.

Chief Justice Nelson said, " the want of jurisdiction appears on the face of the proceedings, and the court are bound to correct any errors therein, without regard to the seeming laches of the administrators." (*See also Cowen & Hill's Notes*, 987, 1002.) The principle of these authorities was not disputed upon the argument, and the defendant conceded that if the question of the residence in this state, of the attaching creditor had been presented by a direct application to set aside or reverse the proceedings before the judge, the defect would be fatal. It must necessarily be so, within all the adjudications in this state.

We are then to inquire whether the defendants are precluded by going to trial upon the issue of *non est factum*, from taking this objection? In short, whether the defect is open to the defendants in any suit or proceeding to enforce the remedy under this attachment? The plaintiff, in order to make out a case in his declaration which justified the giving the bond in question, was compelled to set forth the proceedings before the judge. This is so held by Judge Cowen in *Ring* v. *Gibbs*, (26 *Wend.* 502,) and the chancellor in delivering his opinion for reversing the judgment of the supreme court does not controvert the doctrine of Judge Cowen, that in declaring upon a bond avowedly taken pursuant to a statute authorizing summary proceedings, it should show that facts existed which by law authorized the obligee to require the bond to be given. This the plaintiff in this case attempted to do, but he has omitted to set forth one essential fact, which according to the statute must appear, in order to justify the judge in issuing the attachment. The defendants instead of demurring, as they could have done, and thus have presented this distinct question, chose to go down to trial and take their chance of defeating the plaintiff upon some other defect in his proof, but in no way waiving their right to insist on this defect in the plaintiff's case. In the matter of *Faulkner*, (4 *Hill*, 598,) the supreme court say that the question of jurisdiction must always remain open to the debtor; for if the officer had no jurisdiction, the whole proceeding was *coram non judice*. If it must always remain open, then it would be competent for the debtor to show upon the trial, as a defence to the bond, by evi-

dence, that the creditor was *not a resident* of the state, in a case where the plaintiff had alleged that fact in his declaration, or he could, as he did in this case, insist before the court that the plaintiff had failed to present a case, which under the statute conferred jurisdiction upon the officer, and therefore, that the bond and all other proceedings in the matter were void as to him. I am of opinion, therefore, that the common pleas were wrong in refusing to charge as requested by the defendants, and that the judgment of the supreme court affirming that decision should be reversed.

Upon the question being put, "Shall this judgment be reversed?" the members of the court present who had heard the argument, except Senator WRIGHT, namely: The PRESIDENT, the CHANCELLOR, and *Senators* BARLOW, BEERS, DENNISTON, EMMONS, HAND, JOHNSON, LESTER, LOTT, PORTER, PUTNAM, SANFORD, SCOVIL, SPENCER and TALCOTT, voted in favor of affirmance.

Judgment affirmed.

