Bowers *v.* Beck *et al.*

L. S. BOWERS, Respondent, *v.* H. H. BECK et al., Appellants,

As a general rule, bills of exception once signed and filed, become a part of the record. Whether in case of mistake in stating fact they may, after term expired, be in any case corrected : Query ?

A bond given to release property taken under a writ of attachment is a bond given in a legal proceeding, and does not require a stamp.

Where a bond is given for the use of a party to an action, but is in the hands of an officer of the Court, the beneficiary of the bond may bring suit thereon before the bond has come into his possession.

Whether the statement in an affidavit that affiant has been informed that defendant has sold certain teams, wagons, etc., with intent to defraud his creditors, is a sufficient compliance with that part of the Statute which requires the facts to be recited on which affiant's opinion is based, before the issuance of the attachment : Query ?

Where a debtor tells a creditor that he has disposed of all his property, and will pay when he gets ready, it creates a strong suspicion of fraud, and is a sufficient foundation for a belief in the creditor's mind that a fraud has been committed.

If there is some evidence to justify the belief on the part of an attaching creditor that fraud is contemplated or has been committed, he may sue out an attachment.

On the trial, that fraud may or may not be established ; but if plaintiff fails on the trial to establish the fraud, still the issuance of the attachment was not a void act.

Great strictness in the form of the affidavit should not be required. The defendant is protected by bond.

What is recited in a bond to be true, is taken as true against the obliger, and need not be averred or proved.

It is only necessary to make averments and proof as to what was done after the execution of the bond, and as to the breaches thereof.

Calling the Court's attention to a part of a record by defendant, whilst plaintiff is proposing to introduce other portions of the same record as evidence, cannot be treated as an introduction of that part by the defendant.

The Courts, in construing a bond, cannot interpolate into it conditions it does not contain.

Where a bond for a release of goods under an attachment is conditioned for payment, if judgment is rendered against the owner of the goods attached, it becomes absolute upon the rendition of judgment whether the attachment is or is not sustained.

A plea similar to that of duress : that the contract had been entered into only to avoid some threatened seizure or destruction of property, has sometimes been allowed in American Courts. But this plea can only be tolerated in cases of imminent danger, when the party has no other apparent means of saving his property from destruction, conversion, or asportation.

Bowers *v.* Beck *et al.*

Where property is attached, the attaching creditor gives bond for damages. The debtor is in no imminent peril of losing his property.

There is nothing in the policy of the law to forbid a bond given to release property from attachment, being enforced according to the very letter of its condition.

*Caldwell* v. *Colgate* and others, 7 Barbour, S. C. Reports, and *Homan et al.* v. *Brinkerhoff*, 1 Denio, 184, denied to be law.

The rule laid down in *McMillan* v. *Dana*, 18 Cal. 339, contains the true rule.

Per BROSNAN, J. The affidavit on which the attachment in this case was issued, met the requirements of the Statute.

Per LEWIS, C. J., dissenting. The dismissal of an attachment operates as a complete release of the sureties on the bond for release of attached property.

When a plaintiff fails to show his case is one of those in which an attachment is authorized to issue, he is not entitled to the benefit of the lien created by the attachment. Why should he be more entitled if defendant overturns his *prima facie* case, on which it was issued ?

If the attachment is discharged, the property attached is necessarily released ; so, too, if the attachment is held to have been improperly issued, the bond must become unavailable.

A bond given to release property illegally attached, may be held as one given under duress of property.

The bill of exceptions shows the order dismissing attachment in former case was introduced. However irregularly that order was brought before the Court, it is good defense, and must be considered in disposing of the case.

The principal in the attachment bond should have been made a party defendant.

APPEALED from the Fourth Judicial District, Hon. C. C. GOODWIN presiding.

The facts are stated in the Opinion.

*Wells & Clarke*, for Appellants, made the following points :

The demurrer to the complaint should have been sustained. It was defective in these particulars : . It does not show the attachment in case of *Bowers* v. *Atkinson* was based on a sufficient affidavit and undertaking filed. in that case. Nor that the case was one in which such writ might legally issue. (7 Hill, 39, 41, 43 ; 1 Hill, 343 ; 18 Cal. 348 ; and cases cited by Judge Field ; 9 Wend. 237 ; 3 Wend. 54 ; 4 Wend. 616 ; 6 Cow. 221–225 ;. 3 Denio, 567 : 2 Chitty's Pl. 457–460 ; 23 Cow. 247 ; 7 Leading Cases, 562 ; 3 Chitty's Pl. 1088 ; 3 Barber, 175 ; 7 Cal. 562 ; 9 Cal. 265.)

The Court erred in finding for plaintiff. First : because the attachment bond sued on was not stamped. Second : it was in the custody of the Court, and not of the plaintiff, when suit was brought.

Bowers *v.* Beck *et al.*

Third : the affidavit for attachment was defective.   Fourth : no undertaking was shown to have been given in the case of *Bowers* v. *Atkinson*.   (Drake on Attachment—Secs. 83–91; Stat. 1861, p. 333, as to affidavit and undertaking ;  6 Wheaton, 119 ; 6 Peters' U. S. 691–709 ; 14 Wend. 237 ; 18 Wend. 611 ; 21 Wend. 672 ; 4 Hill [N. Y.]  598 ; 5 Hill, 195 ; 6 Hill, 313 ; 3 Hill, 619 ; 16 Wend. 524 ; 6 Johnson, 11 ; 2 Johnson, 47 ; 23 Wend. 480 ; 13 Wend. 46 ; 1 Denio, 184 ; 1 Code Rep. N. S. 269 ; 3 Cowan, 206 ; 1 Cal. 163 ; 2 Cal. 17 and 254; 3 Cal. 363 ; 2 Bouvier's Law Dict., title " Regular and Irregular Process ;" 7 Hill, [N. Y.] 187 ; 7 Barber, 253 ; 1 A. K. Marshall, 354 ; Stat. 1861, p. 333, secs. 120, 121 ; State and Federal Statutes as to Stamps.)

The writ of attachment in the case of *Bowers* v. *Atkinson* was dismissed, and this operated as a release of the sureties on the bond given for return of attached property.   (7 La. Reports, 668 ; 14 La. 82 ; 5 Ark. 457 ; 9 Ark, 159 ; 7 Barb. 253.)

*Thos. Fitch* and *J. Neely Johnson*, for Respondent, made the following points :

No motion for new trial having been made, this Court will not review the finding of facts.   (2 Cal. pages 119, 120 ; *ib.* 23 and 484.)

There being no proper statement on appeal the finding of facts is conclusive.   If the conclusions of law are warranted by the facts found, the judgment must be affirmed.   (2 Cal. 148 ; 8 Cal. 90, 323 and 510 ; 9  Cal. 68–95, and 211 ; 10 Cal. 193 ; 11 Cal. 340–391 ; 12 Cal. 280 ; 16 Cal. 185.)

The liability of the sureties was fixed by the judgment. (*Haynes* v. *Josephi*, 26 Cal. 540 ; *Heyneman* v. *Eder*, 17 Cal. 436.)

Sureties have no right to attack the judgment or any of the provisional remedies.   (*Riddle* v. *Balor*, 13 Cal. 305, 306.)

The bond is conditioned to become absolute on the rendition of a judgment for plaintiff.   The rendition of the judgment fixed the liability of the sureties.   There can be no inquiry as to the regularity of the attachment. (*Pico* v. *Webster*, 14 Cal. 204 ; *McMillan* v. *Dana*, 18 Cal. 339.)

Bonds taken in a legal preceeding are not subject to stamp tax.

This was such a bond. (See sections 123, 127, 134, 336 and 337 of Practice Act.)

A bond received by the Sheriff which is not in compliance with the statute is still a good common law bond, and the plaintiff is entitled to recover on it. (See Drake on Attachment, sec. 314, page 317.)

From the time of execution of bond the case ceases to be one of attachment, and proceeds as if simply instituted by summons. (*Hopper* v. *Ball*, 2 Bibb. 221.)

After execution of bond no exception to the attachment or regularity of proceedings under it can be taken. (*Barry* v. *Fayles*, 1 Peters' [7 Curtis' Edition,] top page 594.)

Opinion by BEATTY, J.

This was an action brought on a bond given to release property held under attachment.

Bowers brought suit against G. W. Atkinson for some one thousand six hundred and sixty dollars, and at the time of filing his complaint, also sued out a writ of attachment. The attachment was levied on certain property, and the defendants in this action, in conjunction with defendant in the former action, executed a joint bond conditioned as follows :

" Now, the condition of this obligation is such, that whereas, a writ of attachment was issued against the above bounden George W. Atkinson, at the suit of L. S. Bowers, and certain of his goods and chattels have been attached under and by virtue thereof.

" Now, in consideration of the release of said goods and chattels from such attachment, if the said George W. Atkinson shall well and truly pay any judgment and costs that the said L. S. Bowers may recover against him, the said G. W. Atkinson, then this obligation to be null and void, otherwise to remain in full force and effect.

" G. W. ATKINSON, [Seal]
" H. H. BECK,      [Seal]
" H. A. KENDALL,  [Seal]."

Judgment was rendered for plaintiff. He attempted to make the same by issuance of execution, and failing to collect it of Atkinson

he demanded the amount from the sureties on the bond.   They failed to pay, and Bowers instituted this proceeding.

The complaint sets out the indebtedness of Atkinson to the plaintiff, the suing out of the writ of attachment, the making and filing the necessary affidavit, and undertaking to procure the issuance of the attachment, and that the sheriff to whom the attachment was issued made a levy on personal property.   That, to procure the release of said property, defendants made, executed, and delivered the bond sued on.   That the property, on the delivery of said bond, was released.   The rendition of the judgment, the failure to collect the same on execution, the demand on defendants, etc.

The substantial defenses set up in the answer are :   First.  That the attachment under which the property was seized, was void for want of a sufficient affidavit.   Second. That on trial it was found and adjudged that the facts alleged in the affidavit were not true, and therefore the goods were not legally attached.

Upon the trial of the suit between Bowers and Atkinson, whilst the main issue was found for Bowers, it was at the same time determined that the attachment has been issued improperly, or without sufficient evidence, and the same was discharged.

There is a question, however, in this Court whether the discharge of the attachment in the suit of *Bowers* vs. *Atkinson* was shown in the Court below.

When this case was first called, appellants suggested a diminution of the record.   This motion, and the affidavits filed in support thereof and in opposition, brought out the following facts : One of the counsel for appellants, after judgment for respondent, prepared a bill of exceptions, setting out fully the proceedings on the trial and exceptions taken by the appellants.   An associate counsel for appellants, in looking over the bill of exceptions, thought there was an omission in the statement as prepared by the other counsel, and made an interlineation supplying that supposed omission.  The counsel who first prepared the statement then took it to the Judge and procured his signature thereto.   Some time afterwards, when the Court had adjourned for the term, the Judge's attention was called to the bill of exceptions he had signed.   He thought that part of it which was contained in the interlineation was not correct, and he struck it out by scratching his pen over the interlineations.   He

makes an affidavit that he made this correction because he signed the bill of exceptions without examination, relying on the statement of counsel that it was correct and assented to by opposing counsel, when, in fact, the records of the Court clearly showed that appellants had never introduced any such evidence as was stated by the interlineation to have been introduced, and in fact, that defendants never introduced any evidence at all.

This Court is called on to decide whether they will act on the bill of exceptions as originally signed by the Judge, or as corrected by him after the interlineation was struck out.

As a general rule we think a bill of exceptions once signed by the Judge and filed among the records of the Court, (especially after the expiration of the term at which it was signed and filed) becomes a record in the case and beyond the control of the Judge. At least, it would be a very dangerous practice to allow amendments and alterations at a subsequent term of the Court. Still, we are not prepared to say, if a Judge inadvertently signs a bill of exceptions which states a fact which never existed, that it may not in any case be corrected.

If the minutes of the Court or other documentary evidence should clearly show the mistake, probably it might be corrected in the Court below. But that point it is not now necessary to decide. In this case, it is evident that the Judge mistook the meaning of the clause he struck out. He struck it out because the record showed defendants had never introduced such evidence, nor any evidence. Retaining it in the bill of exceptions, it does not show, or purport to show, defendants introduced any evidence. We are inclined, then, to hold that the bill of exceptions should be considered as it was when signed by the Judge, and before this clause was stricken out.

The bill of exceptions, then, shows that plaintiff " offered in evidence the complaint, the affidavit for attachment, and writ of attachment, and return thereon, in the suit of *L. S. Bowers* v. *Tennessee,* alias *G. W. Atkinson.*" * * * * " And the defendants, by their counsel, then and there objected to their introduction as evidence, on the ground that the said complaint showed upon its face that the cause of action sued upon was not one in which the plaintiff could legally invoke the aid and issuance of a writ of attachment ; that said affidavit was irregular, and not in compliance

with the statute in such case made and provided, and insufficient to support the issuance of a writ of attachment; was irregularly and illegally issued; was void, and all proceedings thereon were illegal and void, *and had been so adjudged by this Court, as shown of record in evidence.*" After the word evidence, follows a direction to include the order dismissing the attachment as part of the bill of exceptions. That order is in these words: "Defendants' counsel moved to set aside attachment. The following witnesses were called on part of plaintiff: L. S. Bowers and William Berick; and on part of defendant, A. Jackson, John Dolson, Geo. W. Atkinson, and Kellem. Motion of defendant sustained, plaintiff excepted."

The words italicised and the direction to include the order dismissing attachment are those stricken out of the statement by the Judge, but which we shall consider as a part of the statement. But whilst we shall consider this part of the statement in the bill of exceptions, we do not think it shows that either the plaintiff or defendant introduced the judgment or order dissolving the attachment in evidence. The defendants, at the time this order was alluded to, were not offering anything in evidence. They were objecting to evidence offered by plaintiff. Whilst plaintiff was offering in evidence some of the papers filed in the case of *Bowers* v. *Atkinson,* it would seem (giving a fair construction to this part of the statement) defendants called attention to an order made in the same case, the existence of which ought to operate on the mind of the Judge as a reason for rejecting the other papers. In other words, the defendants would seem to have claimed that the record in *Bowers* v. *Atkinson* should not be produced piecemeal; but if offered, must be offered as a whole, and if the record considered as a whole failed to sustain plaintiff's action, no part of it should be received in evidence. The statement does not show that there was an affirmative attempt on the part of defendants to introduce this order as evidence on their side. At best, if offered in evidence by defendants, it was only for the special purpose of showing the other papers offered should be rejected. That being the case, the respondents can only be entitled to a reversal of the case on one of two theories: first, that the papers and other evidence offered by the plaintiff and admitted by the Court failed to establish plaintiff's cause of action, and entitled defendants to a nonsuit; or, second,

if all the papers which constituted a part of the proceedings in *Bowers* v. *Atkinson* were excluded, then the other evidence offered by plaintiffs was insufficient to support the action, and entitled defendants to a nonsuit.

First, let us see how the parties stand, admitting these things to have been properly in evidence which were offered by the plaintiff and received by the Court. We have already stated what papers were offered in evidence by the plaintiff. Appellants contend, first, there could be no recovery on the bond because it was not stamped. To this we say the bond *was one given in a legal proceeding*, and did not need any stamp under the revenue laws of either the State or United States.

The second point made is, that the bond was not in the possession or under the control of plaintiff when the suit was brought, but in the hands of the Clerk of the District Court for the Second Judicial District, and was not in plaintiff's power until subsequently delivered to him by order of the Court.

It is sufficient that the bond was made for the benefit of the plaintiff, was made payable to plaintiff, and was in fact his bond, whoever had the custody of it. The mere fact that a plaintiff does have the actual custody of a bond when suit is brought, is no reason for abating the action. If he is the legal owner of the bond, and can produce it at the trial, that is time enough.

The third point of appellants on this branch of the case is, that the affidavit for attachment is so defective on its face as not to show any authority for the issuance of the writ; in other words, that the writ of attachment was void, and that being void the bond was also void. This objection naturally divides itself into two propositions: Was the attachment void? If void, does it follow that the bond is void?

The statute says that the Clerk shall issue a writ, when an affidavit shall be filed, showing: " First, that the defendant is indebted to the plaintiff in a certain sum (specifying the amount of such indebtedness) over and above all legal set-offs or counter claims, upon a contract, express or implied, for the direct payment of money, and that such contract was made or is payable in this Territory, and that the payment of the same has not been secured by any mortgage on real and personal property. Second, that the deponent

has good reason to believe, and does believe, that one or more of the causes set forth in the several subdivisions of the next preceding section actually exists at the time of making the affidavit, reciting the facts upon which such belief is founded."

We think there is no question that the affidavit in this case conforms to the statutory requirements in everything, except it may be in not "reciting the facts upon which such belief is founded." "Such belief" in this case is the belief on the part of plaintiff that defendant had fraudulently, or was about fraudulently, to convey his property, to hinder and delay plaintiff in the collection of his debt. Plaintiff states that his reason for this belief "is that the defendant herein has, as deponent is informed and believes, fraudulently conveyed, sold, and assigned certain teams, wagons, and property, for the purpose of hindering, delaying, and defrauding his creditor, this deponent, and as deponent is informed and believes, is about to fraudulently dispose of all the rest of his property, for the purpose of hindering, delaying, and defrauding this deponent, his creditor ; and because the defendant herein on the twentieth day of April, A.D. 1865, informed this deponent that he had sold all his (defendant's) teams and personal property, and did not own a hoof of the stock, and would ' pay when he got ready,' or words to that effect."

The law says the Clerk shall issue his attachment when plaintiff makes oath to his belief, and recites the facts on which his belief is founded.

Now, does the language quoted recite any facts on which such an opinion might be founded ? He recites that he has been informed defendant had made a fraudulent conveyance. If this part of the affidavit is true, is not this a fact upon which he has a right to frame an opinion ? But it may be objected that this is mere hearsay evidence, and that he should have procured the affidavit of his informant. Or it may be said that this is too general ; that it was merely stating the general result instead of stating the particular facts which constituted or showed the frauds. Perhaps it is not necessary in this case to determine these questions. There is one circumstance he does state with particularity and upon his own information. That is the conversation he had with the plaintiff on or about the twentieth of April, 1865. That conversation

as detailed was not perhaps enough to establish fraud in defendant
if not supported by other circumstances, but was certainly sufficient
to create suspicion and a well founded belief in the mind of plaint-
iff that defendant had made a fraudulent disposition of his prop-
erty.   We think when a debtor tells a creditor he has disposed of
all his property and will pay when he gets ready, it creates a very
strong suspicion of fraud, and a creditor may from such language
well draw the conclusion that a fraud has been committed.

In the case of *Cornell* v. *Lascells*, 20 Wend. 77, a question was
raised as to the sufficiency of an affidavit to support the attachment
issued thereon.   The affidavit was very similar in character to the
present one.   The Court was then composed of three Judges, C.
J. Nelson, and Bronson and Cowen, Justices.   Two of the Judges
held the affidavit not sufficient.   But in reversing the judgment,
the Chief Justice says: " We might possibly have considered it
sufficient to uphold the judgment until reversed ;" thus intimating
that although the facts stated in the affidavit were not of that con-
clusive character to justify the Justice who issued the attachment,
still they tended to prove a fraudulent intent and would sustain the
jurisdiction of the Justice until reversed.

Mr. Justice Cowen dissents.   In his dissenting opinion he says,
among other things :   " The * * Act * * gives an attachment when-
ever a Justice is satisfied, on the facts and circumstances sworn to
by the party, that the debtor has fraudulently assigned or disposed
of his property, or is about to do it."   He then argues that the
circumstances detailed in the affidavit are sufficient to show fraud,
or at least if such circumstances had been detailed to a jury and
they had found fraud on them, no Court would have been justified
in setting aside the finding.   He thinks the judgment should have
been affirmed.

Chief Justice Bronson, in giving an opinion on the subject of
attachments, 7 Hill, pages 188–9, says: " The facts and circum-
stances to establish the grounds on which the application for an
attachment is made, must be verified by the affidavits of two dis-
interested witnesses."   We have quoted from the opinion because
we have not the New York revised statutes to refer to.   In 4 Hill,
in the case of Faulkner, pages 598 to 602, he discusses what facts
must be made to appear by the affidavit to make the attachment

Bowers *v.* Beck *et al.*

valid, and concludes : " Now, although the evidence was far from being conclusive, still it had a legal tendency to make out a case, in all its parts, for the issuing of an attachment.   Enough was proved to call upon the officer for the exercise of his judgment upon the weight and importance of the evidence ; and if he erred in the decision of a question thus fairly presented, the error would not be fatal to the proceedings.   It is only when there is a total want of evidence upon some essential point that the officer will fail to acquire jurisdiction."

Taking then the views expressed by Mr. Justice Cowen in the case cited from 20 Wendell, or those expressed by Chief Justice Bronson in the cases cited from 4 Hill, and they alike uphold the attachment.   That is, they hold that such attachment is not *void*, but that the *prima facie* case for attachment may be rebutted by defendant in attachment.

We think this is certainly good law.   A party suing out an attachment may receive such information as convinces him beyond all reasonable doubt that a fraud is contemplated, and if he waits to get all the particulars so as to set them out in his affidavit, the fraud may be consummated and the property gone before he gets his writ.   But if he is allowed to get the writ upon a general showing of the reasons he has for believing a fraud has been practiced, or is about to be practiced, he may, when the case comes on for trial, be able to prove the fraud by satisfactory evidence.   Our statute is quite different from the New York statute.   The latter requires the facts to sustain the attachment to be proved by the affidavits of disinterested witnesses.   Ours only requires the party to swear to his belief in the existence of certain main facts, and to state the subordinate facts on which that belief is founded.   Certainly, that belief might be founded on information derived from others.   We need not introduce the affidavit of others to prove the facts on which he founded his belief, but if a trial of the question as to the propriety of issuing the attachment arises, he can have the benefit of their testimony.

The statute requires a person suing out an attachment to give bond for all damages caused thereby, if the proceeding by attachment is not sustained.   This is sufficient protection for the defendant.   We do not think great strictness should be required

in setting out the facts to authorize the issuance of the attachment. Not so much as in those States where the attachment serves in lieu of a summons, and authorizes the Court to enter judgment against defendant without actual service on him. This, we are of opinion, was not a void attachment, and the alleged insufficiency of the affidavit was no defense to this action.

The attachment not being void, let us consider what would have been the situation of the parties, if the Court had ruled out the complaint, affidavit of attachment, writ of attachment, and return thereon, as offered by the plaintiff. The bond sued on recites that whereas an attachment was issued and certain goods have been levied on, etc. " Now, in consideration of the release of said goods and chattels from such attachment, if the said G. W. Atkinson shall well and truly pay any judgment and costs that the said L. S. Bowers may recover against him, the said G. W. Atkinson, then this obligation to be null and void ; otherwise, to remain in full force and effect." Whatever the obligor recites in a bond to be true, may be taken as true against him, and need not be averred in a complaint on such bond, nor proved on the trial. That the goods were under attachment is clearly recited. Perhaps it is not so clearly recited that the goods are released when the bond is delivered, but the language used may mean that they are to be released. In that case, it appears to us, all the plaintiff has to do is to aver the release did take place at or after the delivery of the bond, and then prove the breach on the part of the obligors. If this be so, then there was no necessity for averring the existence of a complaint, affidavit of attachment, attachment, return, etc.

This is the view taken by the Chancellor of New York and concurred in by the entire Court for the correction of errors, except one Senator, in a case precisely similar to this. See *Kanouse* v. *Dormedy*, 3 Denio, 567. We entirely concur in the correctness of this decision.

This, we think, disposes of the entire case. But appellants contend that although they did not, after the plaintiff closed his case, offer any testimony, yet they should stand in this Court just as if they had regularly offered in evidence the judgment of the Court dismissing the attachment, on the ground that plaintiff did not sus-

tain by sufficient evidence his allegations to support the issuance of the attachment.

We cannot think that the mere calling of the Judge's attention to that order or judgment as a reason for rejecting other portions of the record of *Bowers* v. *Atkinson*, when offered by the plaintiff in this action, is equivalent to offering it in evidence by the defendants.

But, even if it were in evidence, the writer of this opinion is unable to see how it would alter the result. The defendants have voluntarily entered into a bond to pay any judgment that might be recovered. There was no condition in the bond that they would pay provided the *attachment was held good* and a judgment rendered, but simply on condition that the judgment was rendered. Upon what principle can we interpolate the other condition ? The parties to the bond did not make any such condition; the statute authorizing the bond does not speak of any such condition. Doubtless, if a bond with such a condition had been tendered, the plaintiff would not have released the goods. The statute does not require him to release them, except on a bond with one single condition, and that is as to the rendition of judgment.

There are only two principles upon which it can be contended that the bond would be void in case the attachment was void, or not supported by sufficient evidence where that issue was tried. The one is, that the goods of defendant Atkinson, being illegally held, the bond was given under a species of duress; the other, that it would be against public policy to support bonds given under such circumstances.

At common law, the plea of duress only applied to cases where the person of the defendant was either held in custody, or threatened with violence or imprisonment. That plea could not be sustained by any proof as to seizure or threats against property. Modern American cases have had a tendency to extend that plea, or one similar to it, so as to annul contracts made to avoid threatened destruction or detention of property. But those pleas have never been allowed except in extreme cases, when the danger of destruction, conversion, or asportation was imminent, and no other apparent method of saving the property.

Here there was no such necessity. Atkinson had a bond to in-

demnify him for all losses sustained by the improper issuance of the writ, and the property itself was in the custody of the law.  (See Parsons on Contracts, vol. 1, pp. 319 to 322, and notes, etc., as to the general rules governing this defense.)

We cannot see in what respect such bonds are contrary to the policy of the law.  The defendant in an action of debt or assumpsit has his goods attached.  Rather than wait to see whether the attachment can or cannot be discharged in the due course of law, to obtain the immediate possession of his goods, he gives a bond to the effect that he will pay any judgment obtained against him.  Now, if a judgment is obtained against him, we see no great hardship in his having to pay it.  We do not think it is violating any true policy of the law to make him and his sureties liable therefor, according to the letter of their bond.

In the case of *Caldwell* v. *Colgate* and others, 7 Barbour's Supreme Court Reports, page 253, it was  distinctly held that a bond  given to release property seized under a *void* attachment was itself void. And the case of *Homan et als.* v. *Brinkerhoff*, 1 Denio, 184, seems to be to the same effect.  So, too, it would seem from references made by Mr. Drake in his work on Attachments, that it has been held in Louisiana, or at least strongly intimated, that if after goods were released from attachment by bond, it should be determined that attachment had been improperly issued, the sureties on the bond for the release of the property would be discharged.  With regard to the New York cases last cited, the writer of this opinion must say he does not think they are good law.  With regard to the Louisiana cases, not having access to the opinions themselves, nor to the Statute of Louisiana in relation to attachments, and scarcely any knowledge of the Civil Law which prevails in that State, I am unable to form any opinion about these cases.  I think the true rule is, that when such a bond as the one under consideration is given, you cannot go back to inquire as to whether the attachment was regular or irregular.  The only questions are, was the property released, and has a breach of the bond been shown.  This is the view taken of such a case by the Supreme Court of the State of California, in *McMillan* v. *Dana*, 18 Cal. 339, and I think the correct view.

Judgment affirmed.

Opinion by BROSNAN, J.

I concur in the affirmance of the judgment of the District Court. I hold that the complaint, though susceptible of much improvement, is sufficient; and that the affidavit upon which the attachment in the original suit was based, answered the requirements of the statute.

Although I do not believe in the doctrine that a Court or Judge loses all power and jurisdiction over all orders and judgments after the expiration of the term at which they may be made and rendered, to the full extent claimed and asserted, yet, for the purposes of this case, I wish to be understood as holding that the statement contains the words erased by the District Judge. But this, in my opinion, will not help the appellant's case. With these words in, the record does not show that the order dismissing the attachment in the original suit was introduced, offered, or made evidence in any way in the case.

At that stage of the trial when the plaintiff offered in evidence the complaint, affidavit, and attachment in the original action, the defendants' counsel objected to their competency, and in stating the grounds of objection, assigned as one of them in substance, " that the District Court had adjudged the attachment, and all the proceedings thereon, illegal and void," which objection the Court overruled. This is not a statement that the order or judgment of the Court to that effect was introduced in evidence; and it is a conceded fact that it was not so introduced. It is no more than stating a ground of objection to the testimony, which may be well or ill-founded, like any other ground or reason assigned. But to hold that such an incidental allusion to what the Judge may have done, or to what may have transpired in a different action and between different parties, is tantamount to the actual record proof of the existence of the fact, is a doctrine to which I cannot subscribe. In my humble judgment the record does not contain any legal proof of the dismissal of the attachment in the original action. I am of opinion, therefore, that the judgment of the District Court ought to be affirmed.

11

Dissenting Opinion of LEWIS, C. J.

In my opinion the dismissal of the attachment upon the issue raised by the plea in abatement to the affidavit, was a complete defense to the action on the bond, and the judgment of the Court below should for that reason be reversed. The statute in certain specified cases authorizes the plaintiff to sue out an attachment against the property of his debtor for the purpose of securing any judgment which he may recover. Section 120, of the Practice Act, declares that " the plaintiff, at the time of issuing the summons, or at any time afterwards, may have the property of the defendant attached as security for the satisfaction of any judgment that may be recovered, unless the defendant give security to pay such judgment in the following cases :"

If the plaintiff does not show that his case is one of those in which an attachment is authorized, he is not entitled to the security which this summary proceeding gives him. Why should he be if the same fact is established by the defendant upon the issue raised by an answer to the affidavit? If, upon the trial of that issue, the Court determines that the plaintiff was not entitled to have the property of the defendant attached, it is a direct decision that he has no right to claim the security which is given by attachment, and that he is entitled to no advantage from the issuance of it. It must be admitted that if the writ is dismissed, the defendant's property taken under it, if in the possession of the plaintiff, or the officer, must be given up or returned, and the plaintiff loses his security. Why should he be in any better position if the defendant has given a bond in accordance with the statute to release his property? The bond is a mere substitute for the property itself. (Drake on Attachment, Section 321.) The statute provides that the bond may be given in lieu of the property as security for any judgment which the plaintiff may recover. If then it is determined by solemn adjudication that the plaintiff was not entitled to have an attachment issue, or to the aid of that collateral proceeding, upon what ground can he continue to hold the security which he has obtained by means of it, and maintain an action upon a bond which it has been judicially determined he was never entitled to, and which was obtained by his own wrong?

If the property is released upon the dismissal of the attachment, upon what reason can it be claimed that the bond, which in fact takes its place, should be held as security against the defendant ? It seems to me that when the attachment is set aside, all the proceedings growing out of it must fall with the writ. As an execution falls when the judgment is set aside, so it would seem that the entire proceedings upon a writ of attachment fall when the writ itself is quashed. The plaintiff has no more right to maintain an action on the bond than he has to retain the defendant's property after the attachment is dismissed. If it be determined upon the trial of the issue raised by the plea in abatement that the plaintiff is not entitled to have the defendant's property attached, any security which he may have obtained by means of the writ is founded upon his own wrong, and for that reason, if for no other, he should not be permitted to derive advantage from it. In Louisiana, under a statute, as I judge from what is said of it by Mr. Drake, in his work on Attachments, Sections 317 and 318, it was held that a dissolution of the attachment was a complete defense to the bond given to release the property ; and in the case of *Caldwell* v. *Colgate*, 7 Barbour, 258, and *Homer* v. *Brinkerhoff*, (1 Denio, 184) it was held that if the attachment be void by reason of a defect in the affidavit or otherwise, suit could not be maintained on the bond given to release property taken under the writ. If that be the law, I am unable to see why the dissolution of a voidable attachment does not produce the same result so far as the bond is concerned. When the attachment is void there is nothing to support the bond. Being founded upon a void proceding, it is itself void. So also with a bond given, and the writ is subsequently dismissed, the bond having been given in a legal proceeding, and that proceeding having been set aside, the bond should fall with it. The bond in such case is not given voluntarily, but *in invitum*, and should not be treated as if given without restraint to secure the payment of a just debt.

Again, if the attachment be illegally issued and the defendant gives a bond as prescribed by statute to release his property taken under it, he might easily say that it was given under duress of goods, and avoid it on that ground. True, in England duress of goods is not deemed sufficient to avoid a contract, but in this coun-

try it seems to be recognized as a good defense. (1 Parsons on Contracts, 321, note.)

But it is said that the bill of exceptions does not sufficiently show that the attachment was dismissed. In my opinion it does. One of the objections urged to the introduction of the attachment proceedings in evidence was that the writ had been dismissed, and from the language used in the bill of exceptions I could arrive at no other conclusion than that the order dismissing it was introduced in evidence at the time. It can hardly be presumed that the Court would take cognizance of the order unless it were introduced in evidence at the time the objection was taken. If the bill of exceptions shows that it was introduced in evidence, whatever may have been the immediate purpose for which it was introduced, it should receive its full effect as a defense to the plaintiff's action. If the dismissal of the attachment is a complete defense to the action, and that fact is properly brought to the knowledge of the Court, it should have its full effect, notwithstanding it may have been brought to the notice of the Court at an improper time in the trial, or its full effect escaped the attention of counsel.

The defense is fully before us, and it seems to me should not be passed over merely because it was interposed in the shape of an objection to the introduction of testimony by the plaintiff. I agree with the views expressed by Justice Beatty, that after an appeal is perfected and the lower Court has adjourned for the term, the Judge below has no authority to correct the record without an order from the Appellate Court for that purpose. Hence I conclude that the bill of exceptions should stand as it was at the time the appeal was taken.

If the principal in the bond is living, and was capable of contracting, he should have been made a party defendant with the sureties. The action is upon a joint contract, and all the parties to it should be united. However, this is an objection which could only be taken advantage of on special demurrer, which was not done here. I conclude that the judgment should be reversed, and a new trial awarded.

Bowers *v.* Beck *et al.*

RESPONSE TO PETITION FOR RE-HEARING.

If the Legislature passes an Act amending a former Act, but providing the amendatory Act shall not take effect until a future day, the old Act remains in full force until the amendment goes into operation.

So, too, if it is provided in the amendatory Act that such amendments shall only be operative for the enforcement of future contracts, the old law is in full force, so far as relates to the enforcement of prior contracts.

Per BEATTY, J. Whether the debt on which the attachment, in *Bowers* v. *Atkinson,* was one on which an attachment might legally issue on not, is wholly immaterial. The bond recites that the goods to be released were attached; the obligors cannot contradict that recital.

The clause in the Stamp Acts of the State and United States which exempts from stanp duty those bonds which are "required in a legal proceeding," is not confined to those bonds without which no action could be maintained or prosecuted, but is more general, and means all bonds *required* to give either party to a legal proceeding any advantage or privilege, to which he would be legally entitled in the course of that proceeding upon the execution of a proper bond.

In a trial before the Court without a jury, where one party offers a paper in evidence, and the other side objects, and the objecting party hands the paper to the Judge for inspection to see whether it shall not be excluded, and the paper is excluded, the objecting party cannot afterwards claim that the paper was in evidence because of the fact that it was read by the Judge for this special purpose.

So, if one side offers in evidence a certain number of papers selected from a bundle, and the other side objects because there are other papers belonging to the same bundle, which he claims would show those papers offered should not be admitted in evidence, and he calls the attention of the Court to those other papers, and induces the Judge to read them before deciding the objection, this does not put those latter papers in evidence for the general purposes of the trial.

Opinion by BEATTY, J.

The appellants in this case petitioned for a re-hearing, and based that petition on three grounds. These we will notice in the order in which they are presented in the petition. The first proposition is stated in these terms: " The demurrer should have been sustained in the District Court, because the complaint in the cause does not allege *when* the cause of action sued upon in *Bowers* v. *Atkinson* arose. The complaint, in *this* case, should show *per se* that the cause of action in *that* was one in which the plaintiff could legally invoke the aid of a writ of attachment by a *compliance* with the preliminary requirement of an *existing operative* attachment law."

In support of this proposition, it is urged that the amendments to the attachment law passed in 1864–5, totally abrogate the former attachment law, and as those amendments only apply to debts contracted after April, 1865, no attachment could issue to secure a debt created prior to that time. Reference is made to Section 17 of Article IV, and Section 2 of Article XVII of the Constitution, and several California cases, in support of this proposition.

Section 17 of Article IV, is in these words: " Each law enacted by the Legislature shall embrace but one subject, and. matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be revised or amended by reference to its title only; but in such case, the Act as revised, or section as amended, shall be reënacted and published at length."

Now, as the sections amended are reënacted in full and so appear on the statute book, we do not see what application this section can have, or what light it can throw on the Act as amended. The form of the Act is this: After giving the title of the Act and enacting clause, it proceeds as follows : " Section 1. Section 120 of said Act is amended so as to read as follows." Then follows in full the section as amended. After this, comes " Section 2. Section 121 is amended so as to read as follows."

Then follows in full the section amended. And in this way the Act proceeds until six sections of the former Act, which are designated by their numbers, are altered and reënacted.

Then comes the seventh and concluding section of the amendatory Act, which is as follows : " Section 7. This Act shall take effect and be in force from and after the first (1st) day of April, eighteen hundred and sixty-five, (1865) and shall not be construed to have reference or application to any contract made prior to the time herein specified." As the last section clearly provides that this Act shall have no reference or application to contracts made prior to April, 1865, the question arises whether any law on the subject of attachments does or can exist, affecting such contracts. If we look to the statutes of 1861, we find a law providing for attachments to secure debts in certain cases. Does that law still have any vitality ? In express terms, it has never been repealed. But certain sections of that law have been amended, and those amendments substituted for the former sections, so that in effect

the former sections have been totally abrogated, from and after the time the amendments took effect.

The amendatory Act was approved and became a law on the fourth of March, 1865, but provides, by its own terms, it is not to take effect until the first of April following.

Now, it is clear that although the substitute sections passed in March, the old law remained in force until April.

But further, the new law provides it is not to be construed " to have reference or application to any contracts made prior to the time herein specified."

If the Legislature could provide that the new sections should not take effect for any purpose until nearly a month after the Act was passed, (and we think there is no question on that point) could it not provide that they should never go into effect, so far as to affect the remedy concerning former contracts? We see no serious objection to such an exercise of legislative power. We think that the language used, taken in connection with the object of the amendment, clearly indicates that it was the intention of the Legislature that the law, as passed in 1861, should still be in force as regards all contracts made prior to 1865. The law of 1861 only gave the benefit of attachment when fraud was committed or contemplated. That of 1864–5 extends the benefit of attachment to a very numerous class of contracts where no fraud or unfairness is charged. It is hardly to be presumed that whilst the Legislature gave this harsh remedy against the honest debtor, it was the intention to entirely exempt the fraudulent debtor from its operation. The second section of Article 17, is as follows: " All laws of the Territory of Nevada, in force at the time of the admission of this State, not repugnant to this Constitution, shall remain in force until they expire by their own limitations or be altered or repealed by the Legislature." This does not mean if a Territorial law is altered in any of its sections, it shall entirely cease to have any validity, but simply that all such laws shall remain in force, except as repealed, and subject to such modifications as are effected therein by the Constitution or subsequent legislation. It does not affect the question under discussion.

We think the attachment law of 1861 remains in force as to debts contracted prior to April, 1865.

But even if that were not the case, the writer of this opinion is satisfied it would make no difference. The bond, by its recitals, admits that the goods to be released were under attachment, and I think that admission conclusive and not to be questioned, unless the bond was void or voidable for fraud, infancy, duress, or some other defense to be affirmatively shown.

The second point made is, that the bond was void for want of the proper stamps; that it is not a sufficient objection to say it " was given in a legal proceeding;" but that to dispense with the stamps, it should appear that it was " *required* in a legal proceeding." We are satisfied that, in the sense in which that word is used in the Revenue Laws of the United States and of the State, it was " *required* in a legal proceeding." Counsel for the appellants admit that the affidavit and undertaking, preliminary to the issuance of a writ of attachment, are *required* to be given in a legal proceeding, and are therefore exempt from stamp duties; but contend that a bond for the release of property attached is not *required* in a legal proceeding, because the defendant can just as well make his defense to the action while the attached property remains in the hands of the Sheriff as after he has had it returned to him on the execution of a proper bond. Therefore, such bond is not *required* in the legal proceeding.

We must confess that we fail to see the distinction. It is true, the defense to the action might be made without the return of the property. It is equally true the plaintiff could obtain his judgment without the issuance of his attachment. But in the case of plaintiff, the judgment obtained without the attachment might be valueless. On the other hand, if the defendant had a good defense, he might still be ruined in his business pending the litigation, for want of his property, which was tied up by attachment. We think where the Statute exempts bonds "required in legal proceedings," it is not restricted to those bonds without which a suit cannot be prosecuted or defended; but it refers to all bonds given in the course of a legal proceeding, and which may be required to give either party an advantage or privilege to which he would be legally entitled in such proceeding by executing a proper bond.

The third point made by petitioners is that this Court holds in its former opinion that the order dismissing the attachment was in evi-

dence for a special purpose, and if so, it was in evidence for all purposes, and so showed the attachment was discharged ; and, therefore, that the action in this case could not be sustained.

In this assumption we think the petitioners are entirely wrong. Mr. Justice Brosnan, one of the members of the Court who concurred in the original opinion, expressly held no such proof was before this Court. The writer of this opinion, in several portions of the former opinion, expressed the idea, I think, very clearly, that defendants had *not* offered that order in evidence. The only expression in that opinion which could be construed differently is shown in the words italicised in the following quotation :

" In other words, the defendants would seem to have claimed that the record in *Bowers* v. *Atkinson* should not be produced piecemeal ; but if offered, must be offered as a whole ; and if the record, considered as a whole, failed to sustain plaintiff's action, no part of it should be received in evidence. The statement does not show that there was an affirmative attempt, on the part of the defendants, to introduce this order in evidence on their side. *At best, if offered in evidence by defendants, it was only for the special purpose of showing the other papers offered should be rejected.*"

Now, we are not disposed to go into a verbal criticism to show whether the sentence italicised was, or was not, properly worded. But what we do say is this, that if a plaintiff in an action produces on the trial of a case a bundle of papers which were filed in another case, and selects out of that bundle certain papers, which he offers in evidence, and the defendants should object to admitting those selected papers unless the plaintiff would introduce all the papers in the bundle, this would not be equivalent to offering and introducing all the other papers in the bundle on the part of defendants.

Those other papers could not be held as introduced on behalf of defendants, unless they were specially offered and admitted by the Court. The fact that the Judge before whom the case was tried, may have read these latter papers before determining to admit those offered by the plaintiff, would make no difference. If one party offers a paper in evidence to which the other objects, the objecting party, as a matter of course, passes the paper to the Judge for inspection, in order that he may determine the validity of the objection. This might, perhaps, be said to be putting the paper in evi-

dence for a special purpose ; that is, for the purpose of determining its validity as proof of facts set out in the paper.

But if the Court should reject the paper as not being competent proof of any fact in favor of the party offering, the party objecting could not resort to the same paper as proof of any fact in his favor. That is the case here. If the order dismissing the attachment was produced to the Court, it was only submitted for inspection to show the impropriety of admitting other papers, not to prove any distinct or affirmative fact for defendants, and cannot be considered as having been in evidence.

A re-hearing is denied.