In the matter of C. Hurd & H. Selden, *administrators* of Jesse Hurd, deceased, proceeded against by attachment as *non-resident debtors.*

An *attachment* does not lie against an *administrator* for a demand against his intestate, under the act against *absconding, concealed and non-resident debtors.*

The *want of jurisdiction* may be objected, even after the appointment of trustees.

On the 30th December, 1831, an attachment was sued out February 7. under the act authorizing proceedings against *absconding, concealed and non-resident debtors,* by which the sheriff of New-York was commanded to attach and safely keep all the estate real and personal of Cyrus Hurd and Huntington Selden, *in their capacity of administrators* of Jesse Hurd deceased; which attachment was issued by the first judge of the New York common pleas, on an affidavit that Cyrus Hurd and Huntington Selden, administrators of Jesse Hurd deceased, were *in their representative capacity* indebted to Francis Saltus and Nicholas Saltus upon contract, in the sum of $2333 58, and that they were non-residents of this state. *Notice* to the debtors to appear was duly published for nine months; on the

28th November, 1832, *trustees* were appointed, and on the 15th December following the judge before whom the proceedings were had made a *report* of his proceedings to this court. The persons proceeded against as non-resident debtors now apply to set aside the attachment, and all subsequent proceedings. They shew that the domicil of their intestate was in Connecticut; that he died on the 21st July, 1831, in the city of New York, where, for a long time previous he had carried on business; that on the 3d August, 1831, letters of administration upon the estate of the intestate were granted to both of them in Connecticut, and on the 18th of the same month letters of administration upon the same estate were granted by the surrogate of New York to C. Hurd, one of the parties.

*J. Leveridge & W. Darling*, for the motion, insisted that the statute relative to absconding, concealed and non-resident debtors does not authorize proceedings against executors or administrators for the debt of their testator or intestate; that such was the construction given to the former statute, 1 *Johns. Cas.* 372; and that the revised statutes, 2 *R. S.* 3, § 3, are much more explicit than the former statute, limiting in express terms the proceedings to cases of debtors *personally* indebted.

*J. L. Wendell & H. Bleecker*, contra, contended that the statute gave the remedy against *any person* resident abroad, indebted within this state, 2 *R. S.* 3, § 1, *sub.* 2; and that although the phraseology of the act is, that application for an attachment may be made by any creditor having a demand against *such debtor personally*, the court should give a liberal construction to the act, its object being to afford a remedy to our own citizens within our own jurisdiction, and to relieve them from resorting to a foreign tribunal for the collection of their debts. Being strictly a proceeding *in rem*, in principle it is the same whether the property is owned by the representatives of a deceased person, or by such person before his decease. In the analagous proceeding of a *foreign attachment* it is settled law in England, that executors and administrators may be proceeded against, and being within the reason and

policy of the law, an attachment under our statute against executors and administrators ought to be sustained. If there are doubts as to the right to institute those proceedings, the defendants are too late to object, after the appointment of trustees. By an express provision of the statute, such appointment is made conclusive evidence that the person proceeded against is a concealed, absconding or non-resident debtor, within the meaning of the act, and that the appointment and all the proceedings previous thereto are regular. 2 *R. S.* 12, § 62. If there was error the defendants ought to have sued out a *certiorari*, which they might have done at any time after the institution of the proceedings, 2 *R. S.* 14, § 69 ; instead of doing so, they have acquiesced for upwards of a year, and until after trustees were appointed, to whom the property is transferred by the statute. In cases of bankruptcy, where there has been a long acquiescence in the commission, a supersedeas is never awarded. 1 *Glyn. & J.* 199. 14 *Vesey*, 602. 15 *id.* 464. 1 *Atk.* 102 *and* 145. *Archb. Bankrupt L.* 220. Nor should the proceedings here be set aside, after such great delay.

*By the Court,* NELSON, J.  By the provisions of the statute on this subject, the officer granting the warrant of attachment is required within twenty days after the appointment of trustees to make a report to this court of all the proceedings had before or done by him ; and this court, upon an examination of such report, are authorized to correct any errors therein, and make such order as shall seem just. 2 *R. S.* 13, *&c.* § 68, 70. If, therefore, upon an examination of the report in this case, it appears that the officer granting the warrant of attachment had no jurisdiction in the matter, and that the warrant improvidently issued, it is the duty of this court to correct the error, by setting aside the whole proceedings.

It appears that the persons proceeded against as *non-resident debtors* are the *personal representatives* of a deceased debtor, and that the warrant of attachment was issued against them in their *representative character*. It is insisted on their behalf, that the statute limits this remedy to a debtor *individually,* and does not warrant proceedings against his *personal representa-*

ALBANY,<br>Feb. 1833.<br><br>In the matter<br>of Hurd.

*tives.* This is undoubtedly the true construction of the act. In *Jackson* v. *Walworth,* 1 *Johns. Cas.* 372, it was holden that the then existing statute respecting absent debtors did not warrant proceedings against heirs, executors, trustees or others claiming merely by right of representation. The statute is now much more explicit than it was previous to the revision, and from a note of the revisers we are warranted in the conclusion that its phraseology was altered to conform to the decision in *Jackson* v. *Walworth.* The language of the act is, "Such application, (i. e. the application for the attachment,) may be made by any creditor resident within the state, or out of it, or by his personal representatives, having a demand against such *debtor personally,*" &c. 2 *R. S.* 3, § 3, speaking of the debtor in his *individual* character, in contradistinction to the *representative* character of an executor or administrator. It is also worthy of remark, that although in this very section the remedy by attachment is given to the personal representatives of the *creditor,* it is not given *against* the personal representatives of the *debtor,* which it is fair to presume would have been done, had such been the intention of the legislature. A subsequent section, however, removes all doubt as to the intention of the legislature : By the 64th sec. p. 13, it is enacted, that if a debtor against whom a warrant of attachment has issued, shall *die* before the time limited for his appearance, the proceedings on the warrant shall be stayed, and the property seized shall be delivered to his *personal representatives.* Had it been contemplated that the representatives of a deceased debtor might be proceeded against under this statute, this provision would not have been found in the statute, and on the contrary, provision would have been made for the continuance of the proceedings against the representatives. In view of this explicit enactment that the proceedings already commenced shall stay in case of the death of the debtor, and that the property seized shall be delivered to his personal representatives, the language of the previous sections should be strong and imperative indeed, to warrant the conclusion that proceedings may *originally* be instituted against representatives. Instead of being so, they appear to me to justify no other construction than that an attachment can issue only against a

debtor for a demand against him *personally*, or in his *individual character*. According to this view of the question, the officer who issued the warrant of attachment had not jurisdiction, and consequently the warrant improvidently issued.

It is objected, however, on the part of the creditors who sued out the warrant, that the administrators having acqui-esced in the proceedings until now, the motion to set aside the warrant is too late, and that it ought, on that ground alone, to be denied. In support of this objection, a section of the statute is relied on, which provides that the *appointment of trustees* shall, in all cases except on the hearing of a petition previous to such appointment, be conclusive evidence that the debtor named in such appointment was a non-resident debtor, within the meaning of the act, 2 *R. S.* 12, § 62. This section is a transcript of part of the 26th section of the former act, 1 *R. L.* 163, which declared that the appointment of trustees should be conclusive proof in all courts that the debtor was at the time *absent*, within the meaning of the act, and that the appointment and proceedings previous thereto were regular. Its effect is to preclude all inquiry into the regularity of the proceedings, and to estop the party from denying that he was an absent debtor; but it does not debar him from contesting the jurisdiction of the officer, or insisting that his case is not within the statute. Such is the question presented on this motion, and consequently the section relied on in opposition has no application. The want of jurisdiction appears on the face of the proceedings; and this court, having power to correct any errors therein and to make such order as shall seem just, are bound to do so without regard to the seeming *laches* of the administrators. The attachment and all subsequent proceedings thereon are set aside.