THE COLUMBUS WATCH COMPANY AND OTHERS, APPEL-LANTS, v. ANTHONY J. G. HODENPYL AND OTHERS, RESPONDENTS.

*Partnership — claim against the general estate of a partner who dies and directs the business to be continued — only the fund invested is at risk — attachment — leave to issue execution — offer of judgment — fraud.*

Two partners, named Simon Stern and Joseph Stern, were carrying on business under the firm name of Stern & Stern. Joseph Stern died, leaving a will which authorized his executors to continue the business, which they did, with Simon Stern the surviving partner. Subsequently judgments, upon offers of judgment, were recovered against the firm as continued, and levies were made thereunder.

An action was thereupon brought by certain creditors of the firm as continued, who procured attachments to be issued against the property of the said firm, in which action judgment was demanded that the judgments entered upon the offers of judgment be declared fraudulent, and the executions issued thereon void.

No leave to issue execution upon such judgments had ever been obtained in the Surrogate's Court.

*Held,* that it was not necessary to obtain such leave because the plaintiffs in the executions were not seeking to enforce a claim against the estate of Joseph Stern, and that, as creditors of the firm, they had no claim against said estate.

'That the words in said execution describing the defendants as "Simon Stern, as executor, and Dinah Stern, as executrix," were merely words of description, and that the executors, as such, were in no manner interested in said firm.

'That only the fund placed by Joseph Stern in the business before his death was at risk.

'That no attachment could issue against an executor, generally, upon a claim due from a firm in which his testator had invested a certain portion of his estate.

That an offer of a judgment by persons in the position of the executors of Joseph Stern, was not a preference given by their estate, and, therefore, void for the reason that the creditors in question were not creditors of said estate.

'That a judgment by confession. or upon an offer of judgment, is necessarily collusive, but is not objectionable if made to secure a just debt.

That the burden of proving fraud is upon the person alleging fraud.

'That the fact that Joseph Stern, who was indebted to his niece, made out a note for her representing said debt, told her that she could draw interest upon it whenever she wished, but never, in fact, delivered the note to her, did not necessarily make fraudulent a judgment recovered by her against the firm for said .debt, she having allowed the money to remain with the firm in the meantime.

APPEAL by the plaintiff the Columbus Watch Company, and many other attaching creditors of the firm of Stern & Stern, from a decree dismissing the complaint upon the merits and vacating an injunction heretofore granted and continued, after a trial by the court at the New York Circuit, entered in the office of the clerk of the city and county of New York on the 17th day of February, 1891, and also from a judgment entered on said decree in the same clerk's office, upon the same day dismissing the complaint.

*F. Bien,* for the appellants.

*Hays & Greenbaum,* for the respondents.

VAN BRUNT, P. J.:

The defendant Simon Stern and one Joseph Stern were, prior to May, 1886, carrying on business in the city of New York as copartners under the firm name of Stern & Stern.

On the 20th of May, 1886, said Joseph Stern died leaving a will and codicil thereto, which were duly admitted to probate by the surrogate of the city and county of New York in June, 1886, and letters testamentary were issued thereon to the defendants Dinah Stern and Simon Stern. Among other provisions contained in said will was a clause whereby he authorized his executrix to continue his interest in the business then carried on by him under the firm

name of Stern & Stern, in conjunction with his brother, the defendant Simon Stern, in such manner as they should deem proper, and for such time as they should deem for the best interest of his estate. Thereafter, the said business of Stern & Stern was carried on by said defendant Simon Stern, and by the defendants Dinah Stern and Simon Stern, executrix and executor of the last will and testament of Joseph Stern, deceased, down to the 29th of November, 1890. On said 29th of November, 1890, certain judgments were recovered against the firm of Stern & Stern by various persons claiming to be creditors of said firm upon offers to allow judgment. Executions, on the same day, were issued to the sheriff upon said judgments, and levies made upon all the tangible property of said firm.

The plaintiffs herein, having brought actions against said firm of Stern & Stern upon debts owing by said firm to them, procured attachments against said firm upon the ground that the defendants had disposed of their property with intent to cheat and defraud creditors, and said attachments were levied upon the same property levied upon by the sheriff by virtue of the executions issued upon the judgments hereinbefore referred to.

This action was thereupon commenced to set aside the said judgments upon the ground that they were fraudulent and collusive, and the executions issued thereon null and void.

It is claimed that the executions are null and void because they are issued against Simon Stern, as executor, and Dinah Stern, as executrix, and no leave of the surrogate was obtained.

It is to be observed, in considering this proposition, that no executions were issued against Simon Stern, and Simon Stern, as executor, and Dinah Stern, as executrix. That Simon Stern, and Simon Stern, executor, and Dinah Stern, executrix, were the parties who were carrying on this business represented by the firm of Stern & Stern, and the debts to secure which the judgments were obtained were not debts of the estate of Joseph Stern, but of the firm of Stern & Stern, of which his executor and executrix were members.

It is undoubtedly true that a creditor of the estate of a deceased party cannot issue an execution without leave of the surrogate, but as the plaintiffs in these executions were not seeking to enforce any claim against the estate, the provisions of the Code in respect thereto are entirely inapplicable. This is the view which appears to have

been taken by the surrogate upon the application to revoke the letters testamentary issued under the will of Joseph Stern, deceased, upon which application it was held that the petitioners being only creditors of this firm were not creditors or persons interested in the estate of the decedent, and, consequently, had no standing in court. This view seems to be established (as is shown by the opinion of the justice who tried the case in the court below) by the case of *Willis* v. *Sharp* (113 N. Y., 586), in which the court say : "A power, *simpliciter*, to carry on the testator's trade or to continue his business in a firm of which he was a partner without anything more, will be construed as an authority simply to carry on the trade or business with the fund already invested in it at the time of the testator's death, and to subject *that fund only* to the hazards of the trade, and not the general assets of the estate. The property already embarked in the business is the trade fund, unless it appears from the will that the executors were authorized to use the general assets in the business."

It would seem, therefore, that the creditors of a firm constituted as the one under consideration was, have the ordinary rights of creditors, and are not subjected to the restrictions applicable to the creditors of the estate of a deceased, which restrictions are intended to promote equality of distribution. But if this were not so, the very defects which it is claimed by the appellants render the executions issued null and void, affect equally the attachment under which the plaintiff seeks its recovery. The defendants Stern are described exactly in the same way ; and when motions were made to set aside the attachment on this ground, it was held very properly by the court that these words were mere words of description, and that the executors, as representing the general estate, were in no way interested in this firm. It was only as they represented this particular fund, which was placed at the hazards of this business, that they were interested therein.

The claim upon the part of the appellants that an attachment can issue against an executor, although an execution cannot, is clearly unfounded. In the *Matter of Hurd* (9 Wend., 465), referred to, it is held that an attachment against an executor does not lie for a demand against his testator, but lies against him for a debt contracted by him in his representative capacity, and this is because of the individual responsibility of the executor for debts contracted in the

administration of the estate. Certainly an attachment against an executor for claims against the estate would be as great an anomaly as the issuing of an execution, whereby priority of lien would be given to a creditor.

The criticism passed by the appellants' counsel upon the application of the case of *Willis* v. *Sharp* is entirely unfounded. All that part of the case which is referred to holds, is, that creditors having unsatisfied claims against an estate are not required to allow any portion of the estate to be used in the carrying on of the business, but have the right to have the estate applied as soon as the forms of law will permit upon their debts; and, unless they have in some way consented to the carrying on of the business by the executors, they have the right to insist that the estate, as it existed at death, shall be used for the payment of their debts and of the expenses of administration to the exclusion of debts subsequently created by the executors.

The case of *Hooley* v. *Gieve* (9 Daly, 104; affirmed 73 N. Y., 599), illustrates in a marked manner the enforcement of this right. But the plaintiffs in this action were not creditors of the estate. They are creditors of the firm in which a portion of this estate had been left, and consequently have no interest whatever in the estate, as such, or in the payment of claims against the estate.

The suggestion that some of the judgment-creditors whose judgments are sought to be set aside were creditors of this firm in the lifetime of Joseph Stern, deceased, and that they at the time of the death of Stern had a right to insist upon the payment of their debts from the executor or executrix, and, therefore, could not pursue the firm, cannot prevail. They were creditors of the firm all the time, and as such creditors of the firm they had a right to pursue the assets of the firm in the manner prescribed by law, and it may be that by their assent to the carrying on of the firm as empowered by the will they had lost their rights against the estate. They certainly stand in as good a position to collect their debts as the plaintiffs who are also merely creditors of the firm.

The claim that it is well settled that executors have no power to confess judgment, and that knowing this the defendants resorted to offers and acceptances to evade the law relative to confessions of

judgment, and that, therefore, the judgments in question should be set aside, has no application to the case at bar   This rule applies only to those cases' where an executor attempts to give a preference against an estate.   As the counsel states in his points: "An estate can give no preferences."   But the Court of Appeals has held that creditors of a firm, composed as this was, are not creditors of the estate of the deceased partner.   Therefore, the estate gives no preferences.

The next question presented is the claim that the evidence in · this case shows that the judgments were fraudulent and collusive, and not founded upon *bona fide* debts.   It seems to be claimed that, because some of the judgment-creditors were relatives of the members composing the firm of Stern & Stern, therefore, any judgment allowed to be taken by them must necessarily be fraudulent and collusive.   We do not understand how a judgment entered by confession or upon offer can be otherwise than collusive.   If a man owes a debt, his creditor has the right to sue him, and he has the right to offer to allow judgment, even for the purpose of giving this creditor a preference, and even though the creditor may be a relative. All judgments by confession or upon offers are necessarily collusive ; each of the parties does all he can in order to have that judgment entered, and he has a right so to do, provided the debt is honest, and provided that the object is to secure the payment of that debt, and that only.   If, however, the judgment is obtained for any purpose other than securing the payment of the debt, whether such purpose is that of the debtor or creditor, then the judgment becomes fraudulent as against the creditors of the firm.

It is claimed in the case at bar that there is no sufficient proof that the debts, upon which these judgments were obtained, were *bona fide* debts of the firm of Stern & Stern.   The learned counsel for the appellants, in the consideration of the evidence in this case, all of which was produced by himself, fails to recognize upon which side lies the burden of proof.   There is never any presumption of fraud, except in some special cases arising out of relations of trust. It must always be proved, and if the plaintiffs in this action desire to succeed upon the ground that these judgments were entered fraudulently, because there was no *bona fide* indebtedness, the burden lies upon the plaintiffs to prove that proposition.   It does not lie upon the defendants to prove that the indebtedness existed.

The plaintiffs have wholly failed to establish the proposition that the debts sought to be preferred by the entry of these judgments were not *bona fide* and owing. Whatever evidence there has been upon that subject tends to establish the existence of those debts. They call attention to the testimony and ask why the firm did not produce its books for the purpose of establishing the existence of this indebtedness. It might well have been asked, upon the other side, why did not the plaintiffs cause the books of the firm to be produced and show that the indebtedness did not exist. It is no part of the defendant's duty to establish the existence of the indebtedness until it had been impeached on the part of the plaintiffs.

The case of *Bernheimer* v. *Rindskopf* (116 N. Y., 428) illustrates this principle in respect to the burden of proof.

But it is said, in respect to the judgment of Sophia Stern, that the evidence shows that the note upon which the alleged judgment was obtained had never been delivered, and, consequently, the judgment was fraudulent.

Even if the proposition was true that the note, never having been delivered, it, therefore, never existed as an instrument to be enforced against the firm, and, consequently, the judgment had no foundation in fact; that of itself does not necessarily render fraudulent either the judgment rendered in that case or in the others. The evidence shows that *the debt* was due. The witness says that her uncle, Simon Stern, showed her the note and told her she could draw the interest on it whenever she wished. There was a note made out for her, but it was never handed to her It was to pay the amount which became due from the estate when she became of age. Now, Sophia Stern had a claim against the estate for this $2,000, and if she chose to allow it to remain with this firm she became a creditor of the firm, and the question as to whether there had been an accounting of the estate or not was entirely immaterial.

It is claimed that it was not shown that the estate was solvent or in a condition to pay this legacy. But, in order to show a fraudulent intent upon the part of these parties, it was the duty of the plaintiffs to show that the estate was insolvent, and that Sophia Stern had no claim, therefore, upon it. A mere mistake in regard to the legal effect of a note made out and not delivered does not by any means show a fraudulent intent.

But it is by no means to be admitted, if Sophia Stern's statement of the transaction is true, that the note was not a valid obligation which belonged to her, and which she had a right to enforce. And this testimony evidently the court below believed.

The whole case of the appellants, as was said by the learned judge who tried the case below, rests upon suspicion argumentatively founded in the main upon the absence of explicit proof to support the judgments. More than this is requisite to impeach their validity.

The point made in reference to the refusal of the motion to adjourn the trial of the case until the plaintiffs in this action might procure judgments is certainly novel, but does not address itself with much force to our judgment. The trial of causes is not postponed in order that, by lapse of time, a right to maintain an action may arise at some subsequent time.

The judgment should be affirmed, with costs.

Daniels and Ingraham, JJ., concurred.

Judgment affirmed, with costs.